751 A.2d 1047

LYNNE BEAUCHAMP, PLAINTIFF–APPELLANT, AND TIMOTHY
BEAUCHAMP, PLAINTIFF, v. FRANK J. AMEDIO AND NEW
JERSEY TRANSIT CORP., DEFENDANTS–RESPONDENTS.

Argued March 27, 2000—Decided June 8, 2000.

112

*Robert J. Kelly, Jr.*, argued the cause for appellant.

*Jerry Fischer*, Assistant Attorney General, argued the cause for respondents (*John J. Farmer, Jr.*, Attorney General of New Jersey, attorney; *Nancy Kaplen*, Assistant Attorney General, of counsel; *Valerie L. Egar*, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LONG, J.

The facts of this case are uncontested. On March 15, 1997, a New Jersey Transit bus driven by Frank Amedio rear-ended Lynne Beauchamp's car as she drove around a traffic circle on Route 130 in Collingswood, Camden County. Approximately two weeks after the accident, on April 1, 1997, Beauchamp visited Dr. Michael Ellin, a chiropractor, complaining of neck, shoulder, and lower back pain, as well as headaches, all of which began at the time of the accident. After the initial visit, Dr. Ellin indicated that the permanency of Beauchamp's injuries was "undetermined."

Beauchamp then contacted an attorney who consulted with Dr. Ellin to ascertain whether Beauchamp's injuries would qualify her for non-economic damages in a suit against the State under the Tort Claims Act, *N.J.S.A.* 59:1–1 to 59:13–10. On April 8, 1997, the attorney received Dr. Ellin's initial prognosis indicating that the permanency of Beauchamp's injuries was "undetermined." Two weeks later, Beauchamp underwent a second evaluation by Dr. Ellin, with the same prognosis. Based on those two reports, the attorney advised Beauchamp not to file a notice of claim under the Act because her injuries did not appear serious enough to satisfy the permanency requirements necessary to recover non-economic damages. *N.J.S.A.* 59:9–2(d).

Because her symptoms did not abate, Beauchamp continued to visit Dr. Ellin over the next several months. On September 30, 1997, Dr. Ellin indicated that Beauchamp's condition was "guarded." Based upon that report, her attorney again asked Dr. Ellin whether he believed any of Beauchamp's injuries were permanent.

On October 28, 1997, Dr. Ellin reported to the attorney that Beauchamp's Magnetic Resonance Image (MRI) revealed that she had bulging discs in her cervical spine that would "not heal to their original condition." In addition, an Electromyelogram (EMG) indicated "left cervical radiculopathy" (nerve damage to the neck). Based on Dr. Ellin's report, on December 17, 1997, nine months after the accident, the attorney submitted a notice of claim to the State of New Jersey, New Jersey Transit, Camden County, and Collingswood Borough. On the same day, he filed a motion seeking an order permitting a late filing under *N.J.S.A.* 59:8-9. After some procedural missteps, the trial court denied the motion on the ground that Beauchamp had failed to establish extraordinary circumstances:

> The fact that she had increasing severity in her symptomatology or condition, that doesn't and didn't prevent her from initially filing ... a notice of tort claim within time. It doesn't require her to do anything. It doesn't require her to file any complaint. It's ... a notice to the State that a claim may be made. For those reasons, the motion is denied.

Beauchamp filed a notice of appeal. The Appellate Division ordered a limited remand to allow her to present a new report from Dr. Ellin that indicated permanent damage. Again, however, the trial court denied the motion and the Appellate Division affirmed in an unreported opinion. Beauchamp filed a petition for certification, which we granted. 162 *N.J.* 197, 743 *A.*2d 849 (1999). On appeal, she argues that the lower courts erred in refusing to allow her to file a late notice of claim.

*I*

In 1972, in response to the judicial abrogation of sovereign immunity in *Willis v. Department of Cons. & Econ. Dev.*, 55 *N.J.* 534, 540, 264 *A.*2d 34 (1970), the Legislature enacted the Tort Claims Act, *N.J.S.A.* 59:1-1 to 59:13-10. The overall purpose of the Act was to reestablish the immunity of public entities while coherently ameliorating the harsh results of the doctrine. *N.J.S.A.* 59:1-2. Thus, although public entity immunity is the theme that permeates the statute, it also details certain acts and

omissions for which a public entity or a public employee may be held liable in damages. *N.J.S.A.* 59:2–1 to 59:7A–1. No damages, however, may be awarded in a tort claims action

> for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $1,000.00.
>
> [*N.J.S.A.* 59:9–2].

Chapter Eight of the Act establishes the procedures by which claims may be brought against a public entity for death, injury or damage sustained by any person. "Injury" is defined in *N.J.S.A.* 59:1–3 as "injury to a person ... that would be actionable if inflicted by a private person." Further, the procedural requirements of Chapter Eight establish the time limitation for filing a "claim relating to a cause of action for death or for injury or damage to person or to property." *N.J.S.A.* 59:8–8. Such a claim

> shall be presented as provided in this chapter not later than the ninetieth day after accrual of the cause of action. After the expiration of 6 months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. He failed to file his claim with the public entity within 90 days of accrual of his claim except as otherwise provided in section 59:8–9[.]
>
> [*N.J.S.A.* 59:8–8 (footnote omitted).]

Although *N.J.S.A.* 59:8–1 does not define the date of accrual in any significant way [1], the comment to that section states that "[i]t is intended that the term accrual of a cause of action shall be defined in accordance with existing law in the private sector." Harry A. Margolis & Robert Novack, *Claims Against Public Entities*, 1972 Task Force Comment to *N.J.S.A.* 59:8–1, (Gann 2000). Ordinarily, a cause of action accrues when any wrongful act or omission resulting in any injury, however slight, for which the law provides a remedy, occurs. *Tortorello v. Reinfeld*, 6 *N.J.* 58, 65, 77 A.2d 240 (1950); *Rankin v. Sowinski*,

---

1 That section states that "[a]ccrual shall mean the date on which the claim accrued."

119 *N.J.Super.* 393, 400, 291 *A.*2d 849 (App.Div.1972); *Lutz v. Semcer,* 126 *N.J.Super.* 288, 297, 314 *A.*2d 86 (Law Div.1974), *superseded by statute on other grounds noted by, Serrano v. Gibson,* 304 *N.J.Super.* 314, 315–16, 700 *A.*2d 390 (App.Div.1997). Generally, in the case of tortious conduct resulting in injury, the date of accrual will be the date of the incident on which the negligent act or omission took place. *Fuller v. Rutgers, The State University,* 154 *N.J.Super.* 420, 423, 381 *A.*2d 811 (App.Div.1977), *certif. denied,* 75 *N.J.* 610, 384 *A.*2d 840 (1978); *Torres v. Jersey City Med. Ctr.,* 140 *N.J.Super.* 323, 326, 356 *A.*2d 75 (Law Div.1976); *see also Office of the Governor,* News Release of William T. Cahill at 1 (June 1, 1972) (stating that under Act, claims against state "must be filed within 90 days after the time of the alleged incident."). Obviously, that coincides with the accrual date for a claim for property damage and damage such as wage loss. *N.J.S.A.* 59:8–8.

The only exception to that well established notion of accrual is the case where the victim either is unaware that he has been injured or, although aware of an injury, does not know that a third party is responsible. *Lamb v. Global Landfill Reclaiming,* 111 *N.J.* 134, 144–45, 543 *A.*2d 443 (1988)(recognizing applicability of discovery rule); *Ayers v. Jackson Twp.,* 106 *N.J.* 557, 582, 525 *A.*2d 287 (1987)(noting that discovery rule "tolls the statute until the victim discovers both the injury and the facts suggesting that a third party may be responsible."); *Lopez v. Swyer,* 62 *N.J.* 267, 274, 300 *A.*2d 563 (1973)("[I]t seems inequitable that an injured person, unaware that he has a cause of action, should be denied his day in court solely because of his ignorance, if he is otherwise blameless."). The discovery rule applies to Tort Claims Act cases. *Lamb, supra,* 111 *N.J.* at 145, 543 *A.*2d 443; *Ayers, supra,* 106 *N.J.* at 582, 525 *A.*2d 287.

■ The Act also expressly provides an exception to the ninety day time limit if extraordinary circumstances are present:

A claimant who fails to file notice of his claim within 90 days as provided in section 59:8–8 of this act, may, in the discretion of a judge of the Superior Court, be

permitted to file such notice at any time within 1 year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8–8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than 2 years from the time of the accrual of the claim.

[*N.J.S.A.* 59:8–9].

The phrase "extraordinary circumstances" was added to the statute in 1994. Its purpose was to raise the bar for the filing of late notice from a "fairly permissive standard" to a "more demanding" one. *Lowe v. Zarghami,* 158 *N.J.* 606, 625, 731 *A.*2d 14 (1999). "[T]he amendment may have signaled the end to a rule of liberality" in filing. *Id.* at 626, 731 *A.*2d 14 (quoting *Zois v. New Jersey Sports and Expo. Auth.,* 286 *N.J.Super.* 670, 675, 670 *A.*2d 92 (App.Div.1996)); *see also S.P. v. Collier High School,* 319 *N.J.Super.* 452, 465–66, 725 *A.*2d 1142 (App.Div.1999)(finding that neither student's youth, ignorance, nor learning disability amounted to extraordinary circumstances); *Allen v. Krause,* 306 *N.J.Super.* 448, 454, 703 *A.*2d 993 (App.Div.1997)(reversing trial court's grant of leave to file late notice due to lack of factual findings or legal conclusions); *Wood v. County of Burlington,* 302 *N.J.Super.* 371, 378, 695 *A.*2d 377 (App.Div.1997)(reversing trial court's grant of leave to file late notice of claim). That is the backdrop against which this case must be analyzed.

## II

In determining whether a notice of claim under *N.J.S.A.* 59:8–8 has been timely filed, a sequential analysis must be undertaken. The first task is always to determine when the claim accrued. The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual. Once the date of accrual is ascertained, the next task is to determine whether a notice of claim was filed within ninety days. If not, the third task is to decide whether extraordinary circumstances exist justifying a late

notice. Although occasionally the facts of a case may cut across those issues, they are entirely distinct. It is a common and regrettable occurrence for accrual and extraordinary circumstances to be treated as interchangeable and for courts and litigants to overlook the primary question of accrual and directly confront the ultimate question of extraordinary circumstances. What is important is to understand the framework of a Tort Claims notice analysis and to follow it.

## III

■ The accident between Beauchamp and Amedio occurred on March 15, 1997. It is not contested that Beauchamp was injured at that time. She visited both a physician and an attorney in connection with her injury. Clearly, her cause of action accrued within the meaning of the Tort Claims Act on the date of the accident. *Fuller, supra,* 154 *N.J.Super.* at 423, 381 *A.*2d 811; *Lutz, supra,* 126 *N.J.Super.* at 297, 314 *A.*2d 86. No discovery rule issue is presented in this case. Beauchamp immediately knew she was injured and that Amedio, a public employee, was responsible. This case turns solely on the issue of whether Beauchamp presented extraordinary circumstances for her failure to file a notice of claim within ninety days of March 15, 1997. The circumstance she relied on was that she did not obtain evidence that her injuries were permanent until after the ninety day notice period had expired.

Plainly, that is not an extraordinary circumstance issue at all, but an argument that Beauchamp's claim had not "accrued" until she knew her injuries were permanent. That is not so. The date of accrual of her cause of action was the date of the accident in which she knew she was injured and that a public entity was responsible. The fact that Beauchamp was not yet possessed of evidence of the permanency of her injury "in no way affects the maintainability of the action itself. It only limits the permissible extent of the recovery by eliminating one of the customary elements of common-law personal injury damages." *Montag v. Ber-*

*gen Bluestone Co.*, 145 *N.J.Super.* 140, 149, 366 *A.*2d 1361 (Law Div.1976). *Accord, Lutz, supra,* 126 *N.J.Super.* at 297, 314 *A.*2d 86 (acknowledging that $1000 limit in *N.J.S.A.* 59:9–2(d) "refers to the damages which are allowable in an action against a public entity or public employees. It has no bearing whatsoever on the time of accrual of plaintiff's cause of action."). To the extent that the Appellate Division decision in *Ohlweiler v. Township of Chatham*, 290 *N.J.Super.* 399, 675 *A.*2d 1176 (App.Div.1996), suggests otherwise in dictum, it is disapproved.

In *Ohlweiler,* a teacher in the Township of Chatham was injured during a class trip to the municipal sewage treatment plant on September 30, 1994. 290 *N.J.Super.* at 400, 675 *A.*2d 1176. Upon visiting a doctor, she was diagnosed with a sprained knee and a severe bruise. *Id.* at 401, 675 *A.*2d 1176. Within ninety days, she sought legal advice regarding her options for recovering damages against Chatham. *Ibid.* The attorney advised her that a claim under the Act was not only unwarranted because her injuries were not permanent, but also unwise because she was employed by the municipality against which she would be initiating the claim. *Ibid.* Prior to the expiration of the ninety days, Mrs. Ohlweiler was directed by her doctor to undergo a bone scan. *Ibid.* Five months after the accident, on the basis of the bone scan, she was diagnosed with a bone bruise and torn cartilage. *Ibid.* Because the ninety-day filing limitation had lapsed, she brought a motion to file a late notice of claim pursuant to *N.J.S.A.* 59:8–9, and the trial court, finding that exceptional circumstances had been demonstrated, granted leave. *Id.* at 402, 675 *A.*2d 1176.

The Appellate Division affirmed, acknowledging first that the trial court's decision was to be evaluated under an abuse of discretion standard. *Id.* at 403, 675 *A.*2d 1176. It held that because Mrs. Ohlweiler's change in diagnosis and physical condition "was unusual, unanticipated and unexpected[,]" the trial court did not abuse its discretion in granting leave to file a late notice of claim. *Id.* at 405–06, 675 *A.*2d 1176. *Ohlweiler* specifically stated that the plaintiff's "claim would have been frivolous at the time

[during the 90 day period] in part because the injury that was diagnosed, a sprain and contusion, was not an objective permanent injury entitling her to pain and suffering damages or permanent injury damages under *N.J.S.A.* 59:9–2(d)." *Ohlweiler, supra,* 290 *N.J.Super.* at 405, 675 *A.*2d 1176. Fundamental to that holding is the notion that Mrs. Ohlweiler's claim had not yet "accrued" prior to the point at which medical evidence of permanency was obtained. We disagree. Under well-established principles, Mrs. Ohlweiler's claim accrued at the time of her accident when she sustained an injury that would have been actionable if inflicted by a private individual. *Fuller, supra,* 154 *N.J.Super.* at 423, 381 *A.*2d 811. Neither the fact that she viewed her injuries as transitory, nor her decision not to file a claim, tolled accrual. The permanency requirement of *N.J.S.A.* 59:9–2, which merely delimits what a plaintiff may recover as damages, is of no consequence to the point of accrual. As the Appellate Division observed in *Thorpe v. Cohen,* 258 *N.J.Super.* 523, 528, 610 *A.*2d 878 (1992), "[t]he wording of *N.J.S.A.* 59:9–2(d) precludes only the award of damages for 'pain and suffering.' It does not preclude damages for any other claim or injury."

In reaching our conclusion, we note that at least some of the confusion surrounding this issue is a result of the fact that the "notice of claim" referred to in *N.J.S.A.* 59:8–8 is really a misnomer. A person need not have or even contemplate filing a claim in order to trigger the notice provision. It is more properly denominated as a notice of injury or loss. Although the full extent of an injury or loss may not be known, *N.J.S.A.* 59:8–4, the notice is triggered by the occurrence of injury and must be filed in order for a complaint to be lodged against the public entity.

Indeed, such a reading of the statute is the only one that will serve all of the goals underlying the notice provision. Those goals are: (1) "to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit"; (2) "to provide the public entity with prompt notification of a claim in order to adequately

investigate the facts and prepare a defense[,]" Margolis & Novack, *supra*, 1972 Task Force Comment to *N.J.S.A.* 59:8–3; (3) "to afford the public entity a chance to correct the conditions or practices which gave rise to the claim"; and (4) to inform the State "in advance as to the indebtedness or liability that it may be expected to meet." *Fuller, supra*, 154 *N.J.Super.* at 426, 381 *A.*2d 811 (citing *Stanley v. City and County of San Francisco*, 48 *Cal.App.*3d 575, 121 *Cal.Rptr.* 842, 846 (1975)). If accrual were to depend on the ascertainment of permanency, or a determination to file a claim, the public entity would be deprived not only of the benefits of prompt investigation, but also of the chance to correct the conditions or practices that gave rise to the claim. Such an interpretation cannot be countenanced.

Obviously, if a person does not know that he or she has been injured at all, the cause of action will not accrue. That was not the case in *Ohlweiler* and it is not the case here. Until the existence of an injury (or, knowledge of the fact that a third party has caused it) is ascertained, the discovery rule will toll accrual. However, once an injury is known, even a minor one, the ninety day notice is triggered. Worsening of that injury does not extend the time or otherwise alter the party's obligation.

## IV

■ Because of the confusion surrounding the issue of accrual at the time that Beauchamp consulted her lawyer about this case, we think further inquiry is required. Beauchamp's lawyer, cognizant of *Ohlweiler*, advised Beauchamp that her claim was premature. That advice, though incorrect, was justified so as to warrant extension of the time for filing in this case under the extraordinary circumstances doctrine. In reaching that conclusion, we note that Beauchamp did everything she could to protect a potential claim. She sought medical attention immediately and she sought legal advice. *Lowe, supra*, 158 *N.J.* at 630, 731 *A.*2d 14; *Eagan v. Boyarsky*, 158 *N.J.* 632, 642, 731 *A.*2d 28 (1999). Because she relied on legal advice that was derived from the confusion sur-

rounding this issue, we think she deserves to be granted relief from the ninety day filing requirement of the statute.

## V

Under the Tort Claims Act, a notice of claim must be filed within ninety days of accrual of a cause of action. A claim accrues on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen. If an injured person is unaware that he or she has been injured or that a particular third party is responsible, the discovery rule tolls the date of accrual. Once a claim accrues and the ninety day period has elapsed, the only exception to the notice requirement is where extraordinary circumstances exist that justify late filing.

Because there was general confusion among lawyers and judges relative to those concepts, including a published Appellate Division opinion, Beauchamp established extraordinary circumstances warranting the filing of a late notice of claim. The judgment of the Appellate Division is reversed. The matter is remanded to the Law Division for the entry of an order allowing plaintiff to file a late notice of claim.

*For reversal and remandment*—Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN, LONG, and LaVECCHIA—6.

*Opposed*—None.