**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2867
_____

JOHN MURRAY,
APPELLANT

v.

CRYSTEX COMPOSITES LLC

On Appeal From the United States District Court
for the District of New Jersey
(Civ. No. 2:08-cv-02672)
District Judge:  Honorable William H. Walls

Submitted Under Third Circuit LAR 34.1(a)
February 25, 2010

Before:  CHAGARES, STAPLETON, and LOURIE,[*] Circuit Judges

(Opinion filed: May 6, 2010)
_____

OPINION
_____

CHAGARES, Circuit Judge.

This appeal requires us to determine whether the District Court erred in granting

summary judgment to appellees, Crystex Composites LLC (Crystex), on the ground that

_____

[*] The Honorable Alan D. Lourie, Circuit Judge for the United States Court of
Appeals for the Federal Circuit, sitting by designation

appellant John Murray's claim was barred by the entire controversy doctrine. For the reasons set forth below, we will affirm the District Court's decision.

I.

Because we write solely for the benefit of the parties, we recite only the essential facts. In 2001, Spaulding Composites Company, Inc. (Spaulding) filed a bankruptcy petition in the District of New Hampshire and hired Murray, a Certified Public Accountant, as a consultant. Spaulding's Mykroy/Mycalex Division (M&M) manufactured glass and ceramic electronic components. While working with Spaulding, Murray developed a relationship with George Flores, general manager of M&M. Murray became interested in purchasing M&M and managing it jointly with Flores. After notifying Spaulding's creditors' committee that he believed M&M to be a valuable asset, Murray took steps toward purchasing it. The bankruptcy court rejected Murray's initial bid but suggested that Murray make an offer directly to one of Spaulding's main creditors, CIT Business Group (CIT), to negotiate a purchase of M&M's assets (an industrial property with a manufacturing plant, equipment, and machinery located in Clifton, New Jersey). CIT and Murray eventually agreed upon a purchase price of $764,000 for M&M's assets.

Flores and Murray began to assemble a group of investors who would become the equity owners of Crystex, to which M&M's assets would be transferred. Flores, Murray, and a friend of Murray's, Larry Milby, each agreed to invest $200,000. Milby's niece,

Donna Franks, also contributed $100,000. CIT issued a loan to Crystex for the balance of the purchase price, secured by pledges of stock in American BioMedica Corporation (ABMC) owned by Milby and Murray. Flores solicited three additional investors: Keith Savel, Howard Zimmerman, and David See, who agreed to invest $150,000 for a 10% interest in Crystex. A former Spaulding employee, Charles Rizkalla, was granted a 5% interest in Crystex as "sweat equity" in return for working at a reduced salary.

Flores contributed his $200,000 and Milby contributed $190,000, but Murray failed to contribute any portion of the $200,000 he had pledged. Murray's explanation was that his ABMC stock was "going to go through the roof" and it would be foolish to sell the stock before its value increased. Flores v. Murray, 2007 WL 3034512 at *2 (N.J. Super. Ct. App. Div. Oct. 19, 2007) (per curiam). When Savel, Zimmerman, and See learned that Murray did not plan to make his contribution, they insisted that the parties execute a Memorandum of Understanding (MOU). The MOU, dated October 10, 2003, provided that Murray would contribute $200,000 within six months or "forfeit his shares and ownership in Crystex." Appendix (App.) 39. Murray included a handwritten notation on the MOU, dated October 14, 2003, setting forth the parties' ownership interests: 1) Murray-35.75%, 2) Flores-35.75%, 3) Milby-13.5%, 4) Savel, Zimmerman, and See-10%, and 5) Rizkella-5%. A corrected Certificate of Formation for Crystex was filed on October 15, 2003.[1]

_____

[1] The original Certificate of Formation was filed on October 14, 2003, and named the company as Crystex Ceramics LLC instead of Crystex Composites LLC.

3

On October 15, 2003, the bankruptcy court issued an order authorizing the sale of M&M's assets to "John F. Murray, or his nominee." App. 85. On October 23, 2003, Murray, acting as the Managing Member of Crystex, signed a resolution authorizing Crystex to purchase the M&M assets. On October 26, 2003, Spaulding transferred ownership of M&M's assets to Crystex.

Within several months, Flores grew concerned about Murray's performance. Murray "refused to honor a financial obligation owed to one of the company's manufacturing representatives, wanted to penalize valued customers, and used offensive language when dealing with Crystex's accounts payable clerk." Flores, 2007 WL 3034512 at *5. Flores discovered that Murray was paying his son, a Crystex employee, an unauthorized salary out of the operating account instead of the payroll account. Some employees' paychecks bounced after Murray forgot to transfer money into the payroll account. In addition, Murray still had not contributed his $200,000.

On May 3, 2004, Flores called a special meeting of Crystex's members where a majority voted that Murray "failed to live up to his obligations and that he no longer had an interest in Crystex." Id. at *6. On February 18, 2005, the individual members of Crystex filed an action in the Law Division of the Superior Court of New Jersey, Flores v. Murray, requesting, inter alia, a declaratory judgment that due to Murray's failure to make his capital contribution, he never had an ownership interest in Crystex, or in the alternative, that he no longer had an interest due to the action taken at the May 3, 3004

4

meeting. Crystex was not originally a party to the action, but Murray later joined Crystex as a third-party defendant. Murray's Counterclaim/Third Party Complaint alleged in part that the members of Crystex conspired to oust him before the true value of the assets became known. Murray's Third Party Complaint also included a cause of action for unjust enrichment against the members as well as Crystex.

Following a five-day bench trial in May 2006, the Law Division found that the MOU was an enforceable contract and that Murray violated his contractual obligations by failing to make his capital contribution. As a result, "Mr. Murray never acquired a membership interest in Crystex" App. 124. The Law Division also found that the members proved that Murray had no employment contract with Crystex, breached his fiduciary duty to the shareholders of Crystex, and fraudulently induced the members to invest in Crystex by promising to invest $200,000 of his own money.

Murray appealed the Law Division's decision. The New Jersey Superior Court Appellate Division affirmed in part and reversed in part. The Appellate Division reversed the trial court's decision insofar as it awarded the members counsel fees and held that Murray fraudulently induced the members to invest in Crystex. Flores, 2007 WL 3034512 at *1. In all other respects, the Appellate Court affirmed the judgment of the Law Division. The Appellate Division agreed that Murray's "failure to deliver his contribution rendered his membership interest a nullity." Id. at *11.

On May 27, 2008, Murray filed this action seeking a declaratory judgment that

5

Murray is the legal owner of the M&M assets and alleging that Crystex misappropriated the M&M assets and was unjustly enriched. Crystex moved for summary judgment and on May 29, 2009, the District Court granted Crystex's motion and dismissed Murray's complaint based on the entire controversy doctrine. The District Court held that Murray's claims to ownership of the M&M assets arose from the same series of transactions as those underlying the New Jersey state court proceedings and that New Jersey's entire controversy doctrine required Murray to assert his claims in the earlier proceedings. The District Court rejected Murray's argument that his claims did not accrue until the state court determined that he had no ownership interest in Crystex. Murray timely appealed to this Court.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment de novo, applying the same standard that it used. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008). We will affirm if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

## III.

The District Court relied on the New Jersey entire controversy doctrine to award

summary judgment to Crystex.[2]  This doctrine is codified in Rule 4:30A of the New Jersey Court Rules[3] and "requires that a person assert in one action all related claims against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party."  In re Mullarkey, 536 F.3d 215, 229 (3d Cir. 2008) (internal citations omitted).  The doctrine prevents a party from withholding part of a controversy to litigate later, even if the withheld claim constitutes a separate and independent cause of action.  Id.  As the Supreme Court of New Jersey has explained:

> the entire controversy doctrine seeks to assure that all aspects of a legal dispute occur in a single lawsuit.  The goals of the doctrine are to promote judicial efficiency, assure fairness to all parties with a material interest in an action, and encourage the conclusive determination of a legal controversy.

Olds v. Donnelly, 696 A.2d 633, 637 (N.J. 1997).  The doctrine does not apply to claims that are "unknown, unarisen or unaccrued at the time of the original action."  K-Land Corp. No. 28 v. Landis Sewerage Auth., 800 A.2d 861, 868 (N.J. 2002).

Murray argues on appeal that his claim for ownership of the M&M assets had not arisen or accrued until after the Law Division entered final judgment establishing that Murray had no ownership interest in Crystex.  Alternatively, Murray contends that considerations of fairness should prevent this Court from applying the entire controversy doctrine to his claims.

[2]The parties agree that New Jersey law applies to this case.

[3]"Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ."  R. 4:30A.

Under New Jersey law, "a cause of action accrues when any wrongful act or omission resulting in any injury, . . . for which the law provides a remedy, occurs." Beauchamp v. Amedio, 751 A.2d 1047, 1050 (N.J. 2000). Murray relies on cases in which the entire controversy doctrine did not bar later claims to collect legal fees from an earlier litigation, S & A Realty Corp. v. Kearny Industrial Associates, LLP, 2007 WL 2323492 (N.J. Super. Ct. App. Div. Aug. 16, 2007), and to collect on a prior judgment, Karo Marketing Corp., Inc. v. Playdrome America, 752 A.2d 341, 343 (N.J. Super. Ct. App. Div. 2000). In those cases, the wrongful acts occurred after the commencement of litigation. That is not the case here. Crystex had been in possession of the assets at issue since October 2003, long before the state court litigation commenced and the Law Division issued its judgment. The wrongful act resulting in Murray's purported damages occurred at the time of the underlying transaction. The Superior Court's decision did not result in Murray's alleged injury – rather, according to Murray's claims, his injury was caused by the circumstances surrounding the transfer of M&M's assets.

Murray argues that it would be contrary to the entire controversy doctrine's fairness requirement to bar his claims against Crystex and relies upon the New Jersey Supreme Court's decision in K-Land. In K-Land, the City of Vineland had filed a complaint against K-Land and other parties seeking a declaratory judgment establishing ownership of a force main financed by K-Land. K-Land Corp., 800 A.2d at 863-64. K-Land had no preference amongst the potential owners of the force main because it had

8

reached agreement with the relevant parties on almost all of K-Land's rights to reimbursement. K-Land failed to respond to the City's complaint and a default judgment was entered against it. The other parties to the City's law suit later agreed to a consent judgment that went beyond the issue of ownership and was prejudicial to K-Land's right to reimbursement for the costs related to installation of the force main. Id. at 865. K-Land instituted an action against the sewerage authority and another land owner seeking reimbursement. The trial court dismissed K-Land's action as barred by the entire controversy doctrine, and the Appellate Division affirmed. Id. at 867.

The New Jersey Supreme Court overturned the Appellate Division, emphasizing that "the polestar for the application of the entire controversy rule is judicial fairness." Id. at 871 (internal marks omitted). Because the City's declaratory judgment suit sought to clear title only, and at the time, the reimbursement issue had been mostly resolved, K-Land was not on notice that the suit implicated its right to reimbursement. Id. The K-Land court noted that the leading entire controversy doctrine cases "appear to have involved deliberate and calculated claim-splitting strategies . . . as opposed to an innocent omission by an uninformed litigant." Id. at 868 (citations omitted).

Unlike K-Land, Murray was not an "uninformed litigant" and he was not indifferent to the outcome of the first litigation. The Flores complaint requested a judgment that Murray had no ownership interest in Crystex. As previously noted, Murray was aware that Crystex was in possession of the M&M assets. Thus, Murray was on

9

notice that the dispute over Crystex in the Flores litigation implicated his potential rights to the M&M assets.

Judicial efficiency and fairness to the parties weigh in favor of applying the entire controversy doctrine in this case. Murray's claims involve the same parties and the same underlying transaction as the Flores litigation. The central inquiry is whether the claims "arise from related facts or the same transaction or series of transactions." Fields v. Thompson Printing Co., 363 F.3d 259, 265 (3d Cir. 2004). The factual allegations Murray sets forth in this action track the facts at issue in the state court litigation: the events leading up to the purchase of the M&M assets, the formation of Crystex, and the transfer of assets from Spaulding to Crystex. Thus, there is a "sufficient commonality of facts" to apply the entire controversy doctrine to Murray's complaint. See id. Under these circumstances, piecemeal litigation would delay complete adjudication of the controversy and "unnecessarily clog [the] courts with multiple lawsuits arising out of the same transaction and having a common nucleus of facts." See Highland Lakes Country Club and Cmty. Ass'n v. Nicastro, 988 A.2d 90, 92 (N.J. 2009).

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.