NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4061-13T4

BRIAN BEYER,

     Plaintiff-Appellant,

v.

SEA BRIGHT BOROUGH and SEA BRIGHT
POLICE DEPARTMENT,

     Defendants-Respondents.

_____

> APPROVED FOR PUBLICATION
>
> **May 19, 2015**
>
> **APPELLATE DIVISION**

Argued April 22, 2015 — Decided May 19, 2015

Before Judges Alvarez, Waugh, and Carroll.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-135-14.

Michael T. Warshaw argued the cause for appellant (Zager Fuchs, P.C., attorneys; Mr. Warshaw, of counsel and on the briefs).

Andrew T. Walsh argued the cause for respondents (Chamlin, Rosen, Uliano & Witherington, attorneys; Charles J. Uliano, of counsel; Mr. Walsh, on the brief).

Eric G. Kahn argued the cause for amicus curiae New Jersey Association for Justice (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Mr. Kahn, of counsel and on the brief).

The opinion of the court was delivered by

WAUGH, J.A.D.

Defendant Brian Beyer appeals the Law Division's denial of his motion for leave to file a late notice of claim under the New Jersey Tort Claims Act (Act), N.J.S.A. 59:8-1 to -11, as well as the denial of his motion for reconsideration. We reverse and remand for further proceedings consistent with this opinion.

I.

We discern the following facts and procedural history from the record on appeal.

On August 10, 2013, members of the Sea Bright Police Department arrested Beyer following an altercation at a cabana club. During the arrest, according to the police, Beyer resisted and was placed in a compliance hold by two police officers. Upon arrival at police headquarters, Beyer "continued to act extremely belligerent[ly], kicking the cell door and screaming profanities." The police report stated that he appeared to be intoxicated. According to Beyer, he was physically abused by the police at the time of his arrest, as well as during his transportation to and incarceration at police headquarters. He was treated by emergency medical technicians at police headquarters.

After two nights in the Monmouth County Correctional Institution, Beyer was released. He was subsequently charged

with disorderly conduct, N.J.S.A. 2C:33-2(a)(1), resisting arrest, N.J.S.A. 2C:29-2(a)(1), and criminal mischief, N.J.S.A. 2C:17-3(a)(1). The record is silent as to the disposition of those charges.

On August 13, Beyer voluntarily enrolled in Palm Partners Recovery Center, a chemical-dependency rehabilitation program in Delray Beach, Florida. He was diagnosed with "generalized anxiety disorder with tendency for self-medication and substance abuse." Beyer alleges that injuries sustained as a result of his arrest, including an abdominal hematoma, began to manifest themselves while he was at Palm Partners.

After he returned to New Jersey on September 16, Beyer retained Clifford N. Kuhn, Jr., an attorney who had represented him several times in the past. Kuhn requested discovery from Sea Bright regarding the arrest.[1] Sea Bright subsequently informed Kuhn that the police had lost the videos taken while he was in his jail cell on the night of August 10 to 11. On November 8, the Monmouth County Prosecutor faxed documents related to Beyer's arrest to Kuhn.

In October, Kuhn was diagnosed with a relapse of lung cancer and underwent emergency surgery at Memorial Sloan

---

[1] The record does not reflect when Kuhn made the request to Sea Bright.

Kettering Hospital in New York City. In December, Kuhn informed Beyer that he could no longer handle his case. Kuhn died in early 2014.

Beyer retained new counsel on December 30. On January 8, 2014, Beyer filed a notice of claim against Sea Bright Borough and its Police Department, as well as other unknown defendants. The notice of claim alleged that Beyer had been assaulted during his arrest, resulting in "cuts, bruises, abrasions[,] and an abdominal hematoma."

Because the notice of claim was untimely under N.J.S.A. 59:8-8(a), Beyer simultaneously filed a motion for leave to file a late notice of claim. The motion papers included a certification from Beyer's new attorney, attesting to the fact that Kuhn had been diagnosed with cancer in October and Beyer had retained new counsel in December.

On March 14, following oral argument, the motion judge denied Beyer's motion. In her oral decision, the judge relied heavily on the Supreme Court's then-recent decision in D.D. v. University of Medicine & Dentistry of New Jersey, 213 N.J. 130 (2013). She concluded that

> [t]aking into consideration . . . what the Court tells us in D.D., I'm denying the motion. And I do so with all due respect for the tragic circumstances of Attorney Kuhn, and I do so without in any way

suggesting that he engaged in any kind of malpractice.

The cases talking about medical conditions apply to the claimants as far as I can see. From D.D., I take that an attorney['s failure to act] through inattentiveness does not constitute extraordinary circumstances.

The reason for the inattentiveness may be tragic, as they are in this circumstance, but given the legislative intent with respect to sovereign immunity, and given the Supreme Court's mandate in the D.D. case, I find that Plaintiff here has not demonstrated how his attorney's illness prevented him from pursuing his claim and has failed to demonstrate the existence of extraordinary circumstances that justify the late filing.

Beyer moved for reconsideration in March. Beyer's motion papers included his own certification to the effect that Kuhn had not directed him to retain new counsel until December. On April 28, following oral argument, the judge denied Beyer's motion for reconsideration. This appeal followed.

II.

Beyer's basic argument on appeal is that, because the facts of his case satisfy the "extraordinary circumstances" requirements of N.J.S.A. 59:8-9, the motion judge erred in denying his motions and precluding him from filing a late notice of claim.

The Act provides that a party has ninety days from the accrual of his claim to file notice of a claim against a public entity. N.J.S.A. 59:8-8(a). This notice requirement was created

> (1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet.
>
> [Moon v. Warren Haven Nursing Home, 182 N.J. 507, 514 (2005) (quoting Beauchamp v. Amedio, 164 N.J. 111, 121-22 (2000)).]

N.J.S.A. 59:8-9 allows late filing for the notice of claim under certain circumstances.

> A claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section

59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

[Ibid. (emphasis added).[2]]

The decision to grant a plaintiff permission to file a late notice of claim "'is a matter left to the sound discretion of the trial court.'" R.L. v. State-Operated Sch. Dist., 387 N.J. Super. 331, 340 (App. Div. 2006) (quoting Ohlweiler v. Twp. of Chatham, 290 N.J. Super. 399, 403 (App. Div. 1996), overruled on other grounds by Beauchamp, supra, 164 N.J. at 120). Nevertheless, this "discretion is limited" because the late claimant must show "'sufficient reasons constituting extraordinary circumstances' for the delay and [that] there is no 'substantial prejudice' to the public entity or employee." Ibid. (quoting Ohlweiler, supra, 290 N.J. Super. at 403). Findings about "the lack of 'substantial prejudice' and the presence of 'extraordinary circumstances' . . . must be expressly made in order to comply with the legislative mandate and to justify the entry of an order permitting the filing of a

---

[2] We note that Sea Bright does not contend that the filing of a late claim would be prejudicial to it.

7                                              A-4061-13T4

late notice of claim under N.J.S.A. 59:8-9." Allen v. Krause, 306 N.J. Super. 448, 455-56 (App. Div. 1997).

The "extraordinary circumstances" requirement was not part of the original Act, which merely required "sufficient reasons" to warrant relief from the statutory time bar. Lowe v. Zarghami, 158 N.J. 606, 625 (1999). The "extraordinary circumstances" language was added by amendment in 1994, L. 1994, c. 49, § 5, in order to "raise the bar for the filing of late notice from a 'fairly permissive standard' to a 'more demanding' one." Beauchamp, supra, 164 N.J. at 118 (quoting Lowe, supra, 158 N.J. at 625). "'[T]he amendment may have signaled the end to a rule of liberality' in filing." Ibid. (alteration in original) (quoting Lowe, supra, 158 N.J. at 626). Notably, the 1994 amendment "'does not define what circumstances are to be considered "extraordinary" and necessarily leaves it for a case-by-case determination as to whether the reasons given rise to the level of "extraordinary" on the facts presented.'" Lowe, supra, 158 N.J. at 626 (quoting Allen, supra, 306 N.J. Super. at 455; Ohlweiler, supra, 290 N.J. Super. at 404; O'Neill v. City of Newark, 304 N.J. Super. 543, 551 (App. Div. 1997); Margolis and Novack, Claims Against Public Entities, comment on N.J.S.A. 59:8-9 (1999)).

In <u>D.D.</u>, <u>supra</u>, 213 <u>N.J.</u> at 156, the Supreme Court rejected the plaintiff's argument that "an attorney's inattention to a file, or even ignorance of the law, equates with extraordinary circumstances for tort claims purposes." The plaintiff, D.D., had argued that she repeatedly attempted to contact her attorney regarding the status of her case, and that he had assured her he would diligently represent her. <u>Id.</u> at 136-37. A closely divided Supreme Court determined that, as a matter of legislative intent, the attorney's failure to act in a timely manner could not be considered an "extraordinary circumstance."[3] The majority was unwilling to conclude that

> inattention or even malpractice of an attorney can serve to vault the statutory threshold for relief [based on extraordinary circumstances, because to do so] would be replacing circumstances that rendered a plaintiff incapable of complying with the time frame with a standard more in the nature of inadvertence, negligence, inattentiveness or ignorance.
>
> [<u>Id.</u> at 157-58.]

---

[3] We note Beyer's suggestion that we look to <u>Tischler v. Watts</u>, 177 <u>N.J.</u> 243 (2003), for further guidance on the issue of what constitutes extraordinary circumstances. That case, however, involved extraordinary circumstances with regard to a delay in filing an affidavit of merit. <u>Id.</u> at 245-46. Inasmuch as the decision in <u>D.D.</u> was based on the Supreme Court majority's interpretation of the Legislature's intention with respect to the 1994 amendment to the Act, we decline to consider whether a different or more expansive interpretation of its use in the Act can be gleaned from the use of "extraordinary circumstances" in a different statute.

The Court found that a malpractice action against D.D.'s attorney was her only "avenue to secure a just result." Id. at 158.

The motion judge interpreted D.D. as precluding consideration of an attorney's serious or fatal illness as "an extraordinary circumstance," categorizing it as a form of inattention. We are not bound by the motion judge's interpretation of the law, Estate of Hanges v. Metropolitan Property & Casualty Insurance Co., 202 N.J. 369, 385 (2010), and do not agree with her reading of D.D.

An attorney's failure to act due to his or her serious incapacity or death are not routine matters, and should not be equated with mere inattention. In addition, we note that, although the D.D. majority determined that a malpractice action against the claimant's unresponsive attorney was D.D.'s only means to "secure a just result," D.D., supra, 213 N.J. at 158, the motion judge suggested that Kuhn was not guilty of malpractice, as a consequence of which that remedy might not be available to Beyer.

On the present record, we cannot conclude that Beyer's failure to file a timely notice of claim was simply something in "the nature of inadvertence, negligence, inattentiveness or ignorance." On its face, Kuhn's illness and related incapacity

appear to represent an extraordinary situation, and one which requires further exploration and consideration by the motion judge prior to her exercise of discretion under N.J.S.A. 59:8-9. Consequently, we reverse the orders on appeal and remand to the Law Division for a plenary hearing to determine the facts surrounding Beyer's failure to file a timely notice of claim and the extent to which it was the result of Kuhn's grave illness, as opposed to the type of "inadvertence, negligence, inattentiveness or ignorance" that was of concern to the Supreme Court majority in D.D.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4061-13T4