**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1945-18T4

HICCSON GOMEZ,

     Plaintiff-Respondent,

v.

TIMOTHY J. KENNEDY, M.D.,
RUTGERS, THE STATE
UNIVERSITY OF N.J., RUTGERS,
and THE CANCER INSTITUTE
OF N.J.,

     Defendants-Appellants,

and

RWJ-MG, THE CANCER
INSTITUTE OF N.J.,

     Defendant.

_____

     Argued September 18, 2019 – Decided October 8, 2019

     Before Judges Fuentes, Haas and Mayer.

     On appeal from the Superior Court of New Jersey, Law
     Division, Middlesex County, Docket No. L-5837-17.

Russell J. Malta argued the cause for appellants (Orlovsky, Moody, Schaaff, Conlon & Gabrysiak, attorneys; Paul F. Schaaff, of counsel; Russell J. Malta, on the brief).

Kendall S. Murphy argued the cause for respondent.

PER CURIAM

In this medical malpractice cause of action, defendants Timothy J. Kennedy, M.D.; Rutgers, The State University of N.J.; Rutgers, and The Cancer Institute of N.J. appeal from the order of the Law Division that denies their motion to dismiss plaintiff Hiccson Gomez's complaint for his failure to file the notice of claim required by the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 59:13-10, in a timely fashion. Defendants also appeal from the order that grants plaintiff's cross-motion to file the required notice of claim more than one year after he filed his complaint in the action. We reverse. We derive the following facts from the certifications submitted by the parties in support of their respective motions.

Plaintiff was diagnosed with colon cancer in 2009. He initially had laparoscopic surgery and was declared in remission for a period of five years. When the cancer returned in 2014, he consulted with other physicians who suggested he receive interventional radiation and a surgically placed "colostomy bag . . . on the left side of [his] body." Plaintiff consulted with Dr. Timothy

Kennedy, a staff physician and Associate Professor of Surgery in the Gastrointestinal Oncology Program at Rutgers, the Cancer Institute, a Department of Rutgers – The State University of New Jersey. On October 5, 2015, Dr. Kennedy surgically removed plaintiff's colostomy bag. Plaintiff's surgery and post-operative visits with Dr. Kennedy all took place in the Cancer Institute that was connected by a bridge to the University Hospital complex.[1] All of Dr. Kennedy's post-operative appointments with plaintiff occurred in the Rutgers Cancer Institute building.

Plaintiff alleges that three months after the surgery, he noticed "a rush of air, like flatulence, whenever [he] attempted to urinate." When this problem persisted, he consulted his oncologist, whom, in turn, referred him to other physicians. According to plaintiff, these physicians told him he had a fistula, which was caused by the "technical mistake" of his colon being stapled to his bladder. Plaintiff does not identify the exact date these doctors revealed to him this astonishing medical error. However, he made the following admission in his certification in support of his motion to file an untimely TCA notice in this case:

---

[1] As part of his appendix, plaintiff included a photograph that depicts the bridge of the medical complex with the name: "Robert Johnson University Hospital and Rutgers Cancer Institute of New Jersey."

I did not have a desire to commence a lawsuit, and was willing to deal with the noise when urinating to avoid any additional struggles. It wasn't until mid-to-late 2016 that I even realized that Dr. Kennedy made a mistake.

Plaintiff retained the attorney who represents him in this case on May 5, 2017. Counsel filed the complaint alleging medical malpractice five months later, on October 3, 2017. The complaint named as defendants Dr. Kennedy, Rutgers, the State University of New Jersey, Rutgers, the Cancer Institute of New Jersey, and RWJ-MG, the Cancer Institute of New Jersey. He filed an amended complaint two days later on October 5, 2017. Plaintiff's complaint laid dormant until April 20, 2018, when the Middlesex Vicinage Civil Division Manager administratively dismissed the complaint without prejudice for lack of prosecution pursuant to Rule 1:13-7.

Plaintiff's counsel finally served defendants with process on July 19, 2018, and the trial court restored the complaint to the active trial calendar on August 3, 2018. On September 19, 2018, defendants moved to dismiss the complaint based on plaintiff's failure to serve a timely TCA notice of claim, as required under N.J.S.A. 59:8-8, which provides, in relevant part:

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action. After the

4

expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:

a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in [N.J.S.A.] 59:8-9; or

b. Two years have elapsed since the accrual of the claim; or

c. The claimant or the claimant's authorized representative entered into a settlement agreement with respect to the claim.

[(Ibid. (emphasis added)).]

On October 18, 2018, plaintiff filed a cross-motion seeking leave of court to serve defendants with an untimely TCA tort claims notice. Plaintiff's motion was predicated on the relief available under N.J.S.A. 59:8-9, which provides:

A claimant who fails to file notice of his claim within 90 days as provided in [N.J.S.A.] 59:8-8 of this act, may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8

5

of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter; provided that in no event may any suit against a public entity or a public employee arising under this act be filed later than two years from the time of the accrual of the claim.

[(Ibid. (emphasis added)).]

As a threshold issue, the motion judge mistakenly analyzed defendants' motion to dismiss under the standard codified by Rule 4:6-2(e). This erroneous approach caused the judge to disregard the public policy underpinning the TCA. The Legislature adopted the TCA to "reestablish the immunity of public entities while coherently ameliorating the harsh results of the doctrine." Beauchamp v. Amedio, 164 N.J. 111, 115 (2000). Thus, "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." N.J.S.A. 59:8-3. Stated differently, "in balancing the liability and immunity provisions of the TCA, 'immunity is the rule and liability is the exception.'" Smith v. Fireworks by Girone, Inc., 180 N.J. 199, 207 (2003) (quoting Posey ex rel. Posey v. Bordentown Sewerage Auth., 171 N.J. 172, 181-82 (2002)). The immunity provisions of the TCA also extend to public employees. Lowe v. Zarghami, 158 NJ 606, 615 (1999).

The trial court must apply "a sequential analysis" in determining whether a late notice of claim is appropriate. Beauchamp, 164 N.J. at 118. "The first task is always to determine when the claim accrued." Id. The accrual date occurs when plaintiff knows he is injured and that a public entity caused the injury. Id. at 119. For example in Lowe, 158 N.J. at 611, although plaintiff's surgery took place on September 26, 1994, she did not become aware of any medical malpractice until August 1995 after a follow-up appointment with another doctor. The Court determined that the August 1995 date was the date of accrual even though plaintiff was not aware that defendant was a public employee at the time. Id. at 625; but see Beauchamp, 164 N.J. at 119 (holding that the date of accrual was the date of the car accident between the plaintiff and an NJ transit bus because plaintiff was immediately aware of her injuries and that a public employee was responsible.).

The date of accrual is a critical and often dispositive factor in this analysis because:

> [A] judge is powerless under the statute to exercise any discretion or to act after a period of one year has elapsed from the date on which the cause of action accrued, where the application to the court by motion for permission to file a late notice of claim has not been made within the year.

A-1945-18T4

[(Fuller v. Rutgers, State University, 154 N.J. Super. 420, 423 (App. Div. 1977)).]

Here, plaintiff averred in his certification that he was aware of his right to sue in "mid-to-late 2016." In order to permit the court to determine the accrual date, plaintiff must use more precise language to identify the date when he learned the cause of his medical condition. His medical records would easily and reliably provide more precise information about the date he was informed that his colon and bladder had been stapled together as a consequence of a "technical mistake." Given plaintiff's ambiguous phraseology, a reasonable reading or interpretation of "mid-to-late 2016" allows this court to conclude plaintiff's cause of action accrued between June 2016 and December 2016.

Assuming plaintiff's accrual date is December 31, 2016, pursuant to N.J.S.A. 59:8-8, plaintiff was required to serve defendants with a proper TCA notice of claim by March 30, 2017. Plaintiff did not file his complaint with the court until October 3, 2017, and did not serve defendants with process until July 19, 2018. Finally, plaintiff did not file his cross-motion for leave to serve defendants with a late notice of claim until October 18, 2018. As the Supreme Court made clear in D.D. v. Univ. of Med. & Dentistry of N.J., "neither inattention nor incompetence of counsel meets the extraordinary circumstances test devised by the Legislature." 213 N.J. 130, 135 (2013). The uncontested

chronology of events we have described here does not give plaintiff any grounds to support a finding of "extraordinary circumstances." There is no legal or factual basis that entitles plaintiff to any relief under N.J.S.A. 59:8-9.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1945-18T4