**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0703-23

IN THE MATTER OF
MARY FIORENTINO.

_____

Submitted October 15, 2024 – Decided October 21, 2024

Before Judges Sabatino and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5294-23.

Hill Wallack, LLP, attorneys for appellants/cross-respondents Sayreville Board of Education and Selover School (Cherylee O. Melcher and Jeffrey L. Shanaberger, on the briefs).

The Grossman Law Firm, LLC, attorneys for respondent Mary Fiorentino (Jennifer Harwood Ruhl, of counsel and on the brief).

Dvorak & Associates, LLC, attorneys for respondent/cross-appellant Middlesex County (Danielle Abouzeid, of counsel and on the briefs).

Hoagland Longo Moran Dunst & Doukas, LLP, attorneys for respondent Borough of Sayreville (Jack M. Middough, of counsel and on the brief).

PER CURIAM

In this personal injury case brought against several public entities under the Tort Claims Act ("TCA"), N.J.S.A. 59:1-1 to 12-3, defendants appeal the trial court's November 3, 2023 order granting plaintiff's motion for leave to file late tort claims notices with them. The motion was filed more than eleven weeks after the ninety-day deadline prescribed by N.J.S.A. 59:8-8 had expired. Plaintiff attributed her delay in obtaining counsel and filing the motion to the elbow injury she sustained in the accident. For the reasons that follow, we reverse the trial court's order.

The pertinent chronology of events is essentially undisputed. On April 4, 2023, plaintiff Mary Fiorentino tripped and fell when she was walking on a sidewalk near the Jesse Selover School in Sayreville. Plaintiff landed on her right arm. She went that day to a local hospital and was diagnosed with a fractured right elbow. She was discharged the following day.

Plaintiff followed up with an orthopedic surgeon, who diagnosed her with a right displaced olecranon fracture.[1] The doctor performed surgery on April 7, 2023, three days after the accident. He fitted plaintiff with a splint that left her temporarily unable to use her right arm. The operative report noted that, besides

---

[1] An olecranon fracture is a broken elbow bone. Stedman's Medical Dictionary 1361 (28th ed. 2013).

the fracture, plaintiff was "healthy and otherwise active."

The sutures from plaintiff's surgery were removed on April 23, 2023.  She began occupational therapy two days later.  Plaintiff attended occupational therapy two times a week, beginning April 25, 2023.  Her spouse drove her to those appointments.

The surgeon examined plaintiff on May 25, 2023, and wrote a note stating she was unable to work for six weeks.  From June 2023 through the end of August 2023, plaintiff wore a new splint eight hours a day.  She claimed the splint "made it almost impossible to use [her dominant] right arm."  According to plaintiff, her elbow injury caused her to suffer "pain, stiffness, and limited mobility," making it "almost impossible to use [her] right arm" during the five to six months following the accident.

On September 1, 2023, plaintiff underwent a second surgery in which her doctor removed hardware and tried to improve movement in her arm.  On her surgeon's recommendation, plaintiff increased the frequency of her occupational therapy to three days per week.  She returned to work in November 2023.

On July 3, 2023, the TCA's ninety-day deadline for plaintiff to serve a notice of tort claim upon any public entity expired. N.J.S.A. 59:8-8.  Plaintiff did not retain counsel until August 16, 2023, over six weeks beyond the ninety-

3

day period.

On September 20, 2023, plaintiff's counsel filed a motion pursuant to N.J.S.A. 59:8-9, seeking leave to serve late tort claim notices upon various public entities that plaintiff believed could have been responsible for the sidewalk's allegedly unsafe condition. She named as proposed defendants: the Sayreville Board of Education and Jesse Selover School; the Borough of Sayreville; and the County of Middlesex County. Plaintiff supported the motion with her certification and copies of her medical records.

Each of the defendants submitted opposition, contending plaintiff failed to demonstrate the "extraordinary circumstances" required under N.J.S.A. 59:8-9 to extend the ninety-day notice period. Although defendants requested oral argument on the motion, the trial court elected to dispose of it on the papers.

On November 3, 2023, the trial court issued an order granting plaintiff the requested leave to file the late notices. In pertinent part the order stated:

> Based on the submission by Plaintiff and due to the nature of the injury and the impact the injury had and based on the fact that Plaintiff's counsel acted as efficiently as possible once retained, this Court finds that there are exceptional circumstances to allow Plaintiff to file a Notice of Tort Claim out of time.

The public entities now appeal. They argue the motion judge erred in his application of N.J.S.A. 59:8-9 and the associated governing case law.

4

The applicable law is well established. The ninety-day notice period of N.J.S.A. 59:8-8 is designed to afford public entities with a prompt opportunity to investigate accident claims while evidence of the event is still fresh. The purpose of imposing this notice obligation upon a claimant is to give the public entity a fair opportunity to investigate the claim, and potentially resolve it before the entity is put to the burden of having to defend a lawsuit at public expense. See Beauchamp v. Amedio, 164 N.J. 111, 121–22 (2000).

The trial court has a limited degree of discretion under N.J.S.A. 59:8-9 to permit a plaintiff to file a late notice of tort claim. However, a plaintiff must demonstrate "extraordinary circumstances" to excuse a failure to file the notice of tort claim within the prescribed ninety days. N.J.S.A. 59:8-9. Additionally, the filing of the late notice must not "substantially prejudice" the defendant public entity. Ibid.

The phrase "extraordinary circumstances" was inserted into Section 59:8-9 in 1994. "Its purpose was to raise the bar for the filing of late notice from a 'fairly permissive standard' to a 'more demanding' one." Beauchamp, 164 N.J. at 118 (quoting Lowe v. Zarghami, 158 N.J. 606, 625 (1999)).

Given that legislative purpose, our courts have generally applied the exception in a stringent manner. See, e.g., D.D. Univ. of Med. & Dentistry of

New Jersey, 213 N.J. 130, 156–57 (2013) (noting that "an attorney's inattention to a [client's] file, or even ignorance of the law," does not equate with "extraordinary circumstances" to justify a late filing); O'Neill v. City of Newark, 304 N.J. Super. 543, 552–54 (App. Div. 1997) (finding no extraordinary circumstances when plaintiff failed to file a notice within ninety days after being hospitalized due to a gunshot injury to his leg).

N.J.S.A. 59:8-9 does not define the term "extraordinary circumstances," and so "[i]t is for the courts to determine on a case-by-case basis what circumstances will constitute 'extraordinary circumstances.'" O'Neill, 304 N.J. Super. at 551. As the Supreme Court has instructed, "[t]he Legislature's grant of authority to trial courts to permit a late notice in the exercise of their discretion does not equate with a grant of authority to override the statute's declaration of purpose or to substitute a lesser standard of proofs for the extraordinary circumstances demanded by the 1994 amendment to the statute itself." D.D., 213 N.J. at 148. Although deference will ordinarily be given to the factual findings that support the trial court's decision, the court's conclusions will be overturned if they were reached under a misconception of the law. Id. at 147 (citing McDade v. Siazon, 208 N.J. 463, 473–74 (2011)).

The extension motion at issue here rests upon plaintiff's assertion of a

A-0703-23

medical condition that allegedly prevented her from filing a timely notice. Medical conditions can only satisfy the extraordinary circumstances standard if they are "severe or debilitating" and have a "consequential impact on the claimant's very ability to pursue redress and attend to the filing of a claim." Id. at 149–50; see also Mendez v. S. Jersey Transp. Auth., 416 N.J. Super. 525, 533 (App. Div. 2010) (noting that "extraordinary circumstances can be found based on the severity of a party's injuries" including hospitalization for weeks and memory loss); Maher v. Cnty. of Mercer, 384 N.J. Super. 182, 189–90 (App. Div. 2006) (finding that the medical condition of a cook who contracted a staph infection that was so severe she had to be treated by induced coma and did not expect to survive created an extraordinary circumstance).

We agree with defendants that plaintiff's elbow injury—even if we choose to regard it in a light most generous to her—did not rise to a level of severity that satisfies the stringent test of extraordinary circumstances.[2] Although we do not question plaintiff's assertion that the injury was painful, and recognize it required a second orthopedic surgery, plaintiff has not demonstrated why it took her six weeks beyond the ninety-day deadline to consult an attorney. She was

---

[2] We do not hinge our reasoning on the order's mistaken reference to "exceptional circumstances" in lieu of the statutory phrase "extraordinary circumstances." We presume the court intended to say the latter.

not hospitalized overnight except for the day of the accident. Her spouse drove her several times a week to therapy appointments. She does not contend she was unable to speak to an attorney on the phone or via some other means, or to be driven to a lawyer's office, or to otherwise communicate with an attorney. Neither does plaintiff claim she was comatose or mentally incapacitated during that time frame.

The motion judge's order observed that plaintiff's counsel "acted as efficiently as possible once retained." Even so, that sidesteps the question of why plaintiff did not retain an attorney until more than four months after the accident, when the notice deadline had already expired.

Because the trial court misapplied the legal standards, we reverse its decision. Plaintiff's case is dismissed with prejudice.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0703-23