**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0012-24

YAKIMA CHAVERS, individually,
and on behalf of the ESTATE OF
SHAQUAN CAPRON, a deceased
minor,

      Plaintiff-Respondent,

v.

STATE OF NEW JERSEY, COUNTY
OF PASSAIC, and CITY OF PATERSON,

      Defendants-Respondents,

and

PATERSON PUBLIC SCHOOLS
and EASTSIDE HIGH SCHOOL,

      Defendants-Appellants,

and

PATERSON POLICE
DEPARTMENT,

      Defendant.

_____

Argued September 15, 2025 — Decided October 17, 2025

Before Judges Natali, Walcott-Henderson, and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-0351-24.

Christopher R. Paldino argued the cause for appellants Paterson Public Schools and Eastside High School (Chiesa, Shahinian & Giantomasi, PC, attorneys; Nicholas A. Grieco and Alyssa E. Spector, on the briefs).

Noah S. Shapiro argued the cause for respondent Yakima Chavers (Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, PC; Noah S. Shapiro, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent State of New Jersey, joins in the brief of appellant Paterson Public Schools.

Nadege D. Allwaters, County Counsel, attorney for respondent County of Passaic, joins in the brief of appellant Paterson Public Schools.

Jardim Meisner Salmon Sprague & Susser, PC, attorneys for respondent City of Paterson, join in the brief of appellant Paterson Public Schools.

PER CURIAM

Defendants Paterson Public Schools and Eastside High School appeal from a July 24, 2024 order that determined plaintiff Yakima Chavers, individually and on behalf of the Estate of Shaquan Capron, filed timely notices

of claim pursuant to N.J.S.A. 59:8-9, a provision of the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-1.[1]  Based upon our review of the record and applicable legal principles, we affirm.

## I.

On February 17, 2023, plaintiff's fourteen-year-old son, Shaquan,[2] was a freshman at Eastside High School in Paterson.  He left school that day with the rest of his class at dismissal and walked across the street to Park Avenue where he was stabbed by a juvenile who he had a prior altercation with a day earlier.[3]  Another student, Shaquan's cousin, was also stabbed.

Shaquan's father who was at the school to pick him up, immediately learned of the stabbing and both parents immediately went to a local hospital

---

[1]  Defendants County of Passaic, City of Paterson, and the State of New Jersey did not file a notice of appeal of the court's July 24, 2024 order.  Instead, they merely advised us they "joined" the merits briefing of Paterson Public Schools and Eastside High School.

[2]  Because plaintiff and her son share a common surname, we refer to him by his first name intending no disrespect.

[3]  The individual who stabbed Shaquan and his cousin was at one time a student at Eastside High School.  It is unclear from the record if he was currently enrolled at the school on February 17th.

A-0012-24

where they learned Shaquan had died from the stab wounds. Shaquan's cousin survived his injuries.

Within approximately one week of her son's death, Paterson's mayor contacted plaintiff "to provide his condolence[s] and advise that there would be a full investigation into the incident." Plaintiff stated, however, that she "did not understand what [the mayor] meant by the latter comment." Further, on February 28, 2023, NJ.com published an article in which one of the students who witnessed the stabbing stated "[w]hy is it that it was just three kids that were trying to help [the boy who was stabbed]? . . . We needed the adults. The adults should've been the ones applying pressure to the wound, helping this boy."

Ten days after the incident, plaintiff met with Paterson Councilwoman Dr. Lilisa Mims who, according to plaintiff, "suggested [she] file an Open Public Records Act [(OPRA)] request seeking information related to her son's death." The councilwoman "did not state [plaintiff] had any reason to hold . . . [d]efendants responsible," however.

Accordingly, on March 1, 2023, plaintiff went to Paterson City Hall and submitted an OPRA request. Plaintiff specifically requested "Eastside High School cameras[,] both Park Ave[.] and Market St.[,] '[a]ll [p]olice [b]ody

cameras, [p]olice vehicle cameras, Eastside security booth cameras for [the] dates of February 16 [and] February 17, 2023. Requesting video from 8[:00] [a.m. to 5:00 p.m.] from both days." Although she followed up on her request in person, every week, for approximately two months, plaintiff "never received any substantive update[,] let alone a formal response . . . providing [her] with the requested information."

Plaintiff first met with an attorney on March 21, 2023, to "seek[] assistance in getting a local reporter to stop seeking to interview [her] regarding [her] son's death." According to the record before us, the reporter never advised plaintiff he had information regarding the circumstances of her son's death, nor did the attorney advise plaintiff about the need to file a notice of claim within ninety days of the incident and plaintiff did not retain her to do so.

For the first time, on May 23, 2023, a reporter for the Paterson Press, Joe Malinconico, provided plaintiff "with an opportunity to review video surveillance footage of the stabbing of [her] son and its aftermath." According to plaintiff, Malinconico was able to obtain the video through an OPRA request, despite her repeated unsuccessful attempts to obtain the video. Plaintiff stated, upon

> viewing the video footage, [plaintiff] was . . . able to
> see that Paterson Police and Paterson Public School

5

> employees failed to take any measures to render aid to [Shaquan] prior to the stabbing, at the time of the stabbing, or in its aftermath and for an unreasonable amount of time.

Based upon what she observed on video, plaintiff began to search for counsel to pursue a claim against defendants, as well as other public entities. She signed a retainer agreement with her current counsel on June 16, 2023, who served a notice of claim upon each defendant on July 25, 2023. Plaintiff alleged the following causes of action: (1) failure to render aid; (2) failure to call for emergency medical assistance; (3) "[f]ailure to intervene in response to impending, imminent[,] or actively occurring deadly assault;" (4) "[f]ailure to perform non-discretionary and/or ministerial functions;" (5) "[f]ailure to provide adequate security measures and precautions;" (6) "[f]ailure to install, maintain, repair, utilize proper surveillance systems and/or appropriately monitor and/or respond to existing surveillance systems;" (7) failure to warn; and (8) "[c]ivil rights violations."

On October 17, 2023, defendants' insurer denied plaintiff's claim because her notice of claim was not filed within ninety-days as required by N.J.S.A. 59:8-8. In response, on January 31, 2024, plaintiff filed a notice of motion to allow a late notice of claim pursuant to N.J.S.A. 59:8-9. Defendants opposed

6

the motion, and the court ordered a Lopez[4] hearing "to determine the date of accrual of . . . [p]laintiff's [c]ause of [a]ction."

At the Lopez hearing, the court considered plaintiff's testimony and the five exhibits she proffered. Defendants called no witnesses and introduced no independent documents into evidence.

Plaintiff explained that Shaquan's father, who was at the school to pick him up, initially informed her about her son's stabbing. Approximately forty minutes after arriving at the hospital where paramedics had transported Shaquan, doctors informed plaintiff he had passed away.

Plaintiff further stated the school district's superintendent reached out to her on Facebook the day after her son was stabbed and killed, asking her to call him. Plaintiff explained she never called the superintendent, and he was the only individual from the school to reach out. No documentary evidence was submitted, nor was testimony elicited at the Lopez hearing, suggesting that the superintendent, mayor, or councilwoman were aware that any of the defendants bore responsibility for Shaquan's death.

With respect to her OPRA request, plaintiff testified the only update she received was from an individual at city hall who told her "there was nothing to

---

[4] Lopez v. Swyer, 62 N.J. 267 (1973).

A-0012-24

give, that none of the cameras were up and just to come back and follow up." Plaintiff conceded she did not make a request for any incident reports because she "didn't know there was a difference" between submitting a request for the videos and submitting a separate request for incident reports.

As to the video and her meeting with Malinconico, plaintiff stated he did not explain where or when he obtained the video. She further testified that upon viewing the video, she saw Shaquan before and after he was stabbed and when he collapsed on the ground but did not see the police render aid to him at any time or any school employees at the scene.

Plaintiff further testified that prior to viewing the video she did not consider any public entity or employee responsible for her son's death, but the video demonstrated to her that "[t]hey didn't help him. They just . . . he was over there by himself. Well, I mean, the kids were surrounding him, but no one that actually knew what to do helped him." According to plaintiff, she did not know any of this information before viewing the video and decided to retain counsel "[t]he moment [Malinconico] left."

On cross-examination plaintiff conceded she never asked any of her son's classmates about what happened on February 17, nor did she attempt to locate

8

or speak with any eyewitness. Plaintiff also confirmed she never requested any videos from the school, nor did she speak with any school personnel.

She further stated that Shaquan was stabbed across the street from the school, which occurred off-camera, before he ran back and collapsed on the sidewalk in front of the school. Plaintiff also explained she submitted the OPRA request for videos to determine "[w]ho started the fight? . . . Where did [the assailant] stab [Shaquan] because [she] didn't know at that time where he had been stabbed." She also stated Shaquan's cousin "[is] from his dad's side [of the family], [and] they won't let [the cousin] speak to [her]."

After considering plaintiff's testimony and the documentary evidence, the court determined plaintiff's claim did not accrue until she viewed the video on May 23, 2023, and thus her July 25, 2023 notice was timely filed. The court entered a conforming order and explained its decision in a comprehensive oral opinion.

The court specifically found plaintiff "incredibly credible" as she never "wavered in any way [and] there was no prior inconsistent statement made by her." With respect to the accrual date, the court determined plaintiff's claim accrued on May 23, when she "was first able to review the video surveillance footage of the tragic incident. In reaching that determination, the [c]ourt

A-0012-24

consider[ed] . . . plaintiff's diligence in retaining counsel, seeking evidence concerning the acts, and the OPRA request that was never responded to." The court noted it reviewed the video, and it did not "appear . . . that anyone from the police department rendered aid or anyone from the school."

The court further explained it had not determined that any of the public entity defendants were liable, but from plaintiff's perspective,

> it wasn't until May 23[], that . . . the accrual occurred and that [plaintiff] would have believed from watching that video . . . that a cause of action existed against the defendants because she didn't know what the role of the defendants was until she watched that video.

Because the court found the date of accrual was May 23, and thus the July 25 notice was timely, it stated it did not need to address whether extraordinary circumstances existed which would excuse a late notice of claim. The court also found defendants did not suffer any prejudice as a result of plaintiff's July 25 notice. This appeal followed.

## II.

The TCA waives the State's sovereign immunity but does so with certain requirements and limitations. See N.J.S.A. 59:1-2 (explaining that "public entities shall only be liable for their negligence within the limitations of this act"); see also Nieves v. Off. of the Pub. Def., 241 N.J. 567, 574-75 (2020). The

statute's "guiding principle . . . is that immunity from tort liability is the general rule and liability is the exception." D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (quoting Coyne v. Dep't of Transp., 182 N.J. 481, 488 (2005)) (internal quotations omitted). The Act, therefore, "imposes strict requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468 (2011).

Among those requirements is that a claimant, prior to initiating suit, file a notice of claim describing "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," along with other information. N.J.S.A. 59:8-4(a) to (f). The notice of claim:

> shall be presented . . . not later than the 90th day after accrual of the cause of action. . . . The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in N.J.S.[A.] 59:8-9.
>
> [N.J.S.A. 59:8-8.]

N.J.S.A. 59:8-9 provides that:

> [a] claimant who fails to file notice of his claim within 90 days as provided in section 59:8-8 . . . may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity or

11

the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by section 59:8-8 . . . or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter.

"Ascertaining the timeliness of a [TCA] notice requires a simple, three-step sequential analysis that never changes." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 416 (App. Div. 2020) (citing Beauchamp v. Amedio, 164 N.J. 111, 118 (2000)). "The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1." Ibid. "Once the date of accrual is ascertained, one can proceed to the second step, which 'is to determine whether a notice of claim was filed within ninety days' as required by N.J.S.A. 59:8-8." Ibid. (quoting Beauchamp, 164 N.J. at 118). "'If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice' under N.J.S.A. 59:8-9." Ibid. (quoting Beauchamp, 164 N.J. at 118-19). In addition to extraordinary circumstances, there must also be a showing that the public entity is not "'substantially prejudiced'" by the late notice. McDade, 208 N.J. at 477 (quoting N.J.S.A. 59:8-9).

Because the primary issue raised by defendants relates to the trial court's

12

accrual determination—the first step of the <u>Beauchamp</u> analysis—we address that issue first, and with a level of detail necessary to address defendants' various challenges to the court's order. We start our analysis with the observation that the TCA does not precisely define the term accrual. <u>Ben Elazar v. Macrietta Cleaners, Inc.</u>, 230 N.J. 123, 133-34 (2017); N.J.S.A. 59:8-1 ("Accrual shall mean the date on which the claim accrued."). Accrual of a claim under the Act is to be determined "'in accordance with existing law in the private sector.'" <u>H.C. Equities, LP v. County of Union</u>, 247 N.J. 366, 382 (2021) (quoting <u>Beauchamp</u>, 164 N.J. at 116). As our Supreme Court explained:

> In general, our law in the private sector holds that a claim accrues on the date on which the underlying tortious act occurred. However, that same common law allows for delay of the legally cognizable date of accrual when the victim is unaware of his [or her] injury or does not know that a third party is liable for the injury. By operation of the discovery rule, the accrual date is tolled from the date of the tortious act or injury when the injured party either does not know of his [or her] injury or does not know that a third party is responsible for the injury.
>
> [<u>Ben Elazar</u>, 230 N.J. at 134 (citations omitted).]

The common law discovery rule, first articulated in the medical malpractice context in <u>Fernandi v. Strully</u>, 35 N.J. 434 (1961), is a rule of equity that defers a cause of action's accrual date to the date the plaintiff knew or was

13

chargeable with knowing an injury has occurred and the injury is the fault of another. See Lopez, 62 N.J. at 273-74. "It was developed as a means of mitigating the harsh results which flow from a rigid adherence to a strict rule of law." Heyert v. Taddese, 431 N.J. Super. 388, 435 (App. Div. 2013) (citing Lopez, 62 N.J. at 273-74).

"The test for the application of the discovery rule is 'whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another.'" McDade, 208 N.J. at 475 (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)). As the Savage court detailed:

> [The] knowledge of fault for purposes of the discovery rule has a circumscribed meaning: it requires only the awareness of facts that would alert a reasonable person exercising ordinary diligence that a third party's conduct may have caused or contributed to the cause of the injury and that conduct itself might possibly have been unreasonable or lacking in due care.
>
> [Savage v. Old Bridge-Sayreville Med. Grp., P.A., 134 N.J. 241, 248 (1993).]

Thus, the standard is awareness of fault that is merely possible, not legally certain, provable, or probable. Ibid. In other words, the cause of action accrues when the claimant has "two pieces of information that are the key to the discovery rule, namely an injury and 'facts suggesting that a third party may be

responsible.'" Maher v. County of Mercer, 384 N.J. Super. 182, 188 (App. Div. 2006) (quoting Ayers v. Township of Jackson, 106 N.J. 557, 582 (1987)).

The discovery rule is grounded in "'the unfairness of barring claims of unknowing parties,'" and tolls the running of a statutory limitation period where "'injured parties reasonably are unaware that they have been injured, or, although aware of an injury, do not know that the injury is attributable to the fault of another.'" Caravaggio, 166 N.J. at 245-47 (first quoting Mancuso v. Neckles, 163 N.J. 26, 29 (2000); and then quoting Baird v. Am. Med. Optics, 155 N.J. 54, 66 (1998)).

We next address and clarify the applicable standards of review as the parties offer competing, and in our view, incorrect positions. We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 477-78 (2013). For mixed questions of law and fact, like at issue here, we give deference to the court's supported factual findings but review de novo the court's application of any legal rules to such factual findings as the court's determination of the legal consequences of established facts is not due any special deference from us. See Manalapan Realty, L.P. v. Twp. Committee of Manalapan, 140 N.J. 366, 378 (1995); see also State v. Pierre, 223 N.J. 560, 576-77 (2015).

A-0012-24

"Questions of fact as to when a cause of action is deemed to accrue are ordinarily resolved by a judge." Berlen v. Consol. Rail Corp., 291 N.J. Super. 542, 555 (App. Div. 1996) (citing Lopez, 62 N.J. at 272) (in context of statute of limitations). As we have explained, "[w]hether a cause of action is barred by a statute of limitations is a question of law, also reviewed de novo." Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016) (citing Estate of Hainthaler v. Zurich Commercial Ins., 387 N.J. Super. 318, 325 (App. Div. 2006), certif. denied, 188 N.J. 577 (2006)); see also Save Camden Pub. Sch. v. Camden City Bd. of Educ., 454 N.J. Super. 478, 487-88 (App. Div. 2018). "We review a trial court's finding of extraordinary circumstances under the abuse of discretion standard." Jeffrey v. State, 468 N.J. Super. 52, 58 (App. Div. 2021) (citing D.D., 213 N.J. at 147).

Here, we are not evaluating the court's extraordinary circumstances decision and thus the discretionary standard of review expressed in D.D. and N.J.S.A. 59:8-9 does not apply. Rather, the accrual issue before us involves mixed questions of law and fact. We accordingly defer to the court's supported factual findings but apply a de novo standard of review to its application of the facts to the law.

Before us, defendants argue "[p]laintiff's claim accrued on February 17,

16

2023, the date of injury and death, not on a later date." According to defendants, "the . . . court improperly concluded that [p]laintiff's [n]otice of [c]laim was timely filed by misapplying the discovery rule, in contravention of the meaning and intent of the TCA."

Defendants maintain the "court erred in concluding that there is nothing in the record to establish that [p]laintiff should have been aware of any liability until she saw the video on May 23, 2023." Defendants contend on February 17, 2023, plaintiff was aware of the following facts: (1) she dropped her son off at school that morning; (2) because she was able to track his phone, she was aware he was at school throughout the day; (3) that same day she "learned that [Shaquan] had been fatally stabbed on the premises of and/or directly adjacent to the premises of the school around dismissal time"; (4) the incident happened at the school; (5) Shaquan got out of school at 3:13 p.m.; (6) his father was at the school to pick him up; and (7) Shaquan's father called plaintiff to inform her that Shaquan had been stabbed.

Defendants also contend "these facts suggest the possibility of wrongdoing by [defendants] because schools owe a duty of care to their students." Therefore, defendants maintain because plaintiff was aware on February 17, 2023 of both the "injury and facts suggesting that [defendants] may

17

be responsible, her claim against [defendants] accrued on that date, not on May 23, 2023."

Defendants next argue the court disregarded plaintiff's testimony and misapplied the law in concluding her claim accrued on May 23, 2023. It argues

> [n]ot only is subjective knowledge of a cause of action not the standard for determining the accrual date of [a] claim, . . . but there is nothing [in] the record to support the conclusion that [p]laintiff was not aware of [defendants'] role until she watched the video on May 23, 2023.

Specifically, defendants maintain the video did not reveal any information plaintiff did not previously possess. Because "concrete proof of liability is not required for a claim to accrue," defendants maintain plaintiff possessed all the required facts on February 17, 2023, and "[a]ny reasonable person with knowledge of these facts would think that [defendants] may have been potentially liable for [Shaquan's] injuries."

Defendants further argue that tolling under the discovery rule does not depend upon a plaintiff identifying different theories of fault, but whether a reasonable inquiry by the plaintiff would have identified any potentially responsible party. Here, defendants contend "all potential claims against [defendants], including failure to act, arise out of the school's duty to its students during dismissal. On the date of injury and death, [p]laintiff could identify

18

[defendants] as a potentially responsible party."

Defendants also maintain the court improperly relied upon its own observations of the video, rather than plaintiff's. Specifically, defendants aver plaintiff testified that she did not see any school employees on the video, but the court explained it saw an individual wearing a security jacket whom it assumed was employed by defendants. Additionally, defendants argue that any previously unavailable information related solely to the Paterson Police Department and the court should have determined the date of accrual of plaintiff's claims against the school as well.

Finally, defendants contend "[p]laintiff did not exercise reasonable diligence in investigating [her] claim[s]." Defendants argue the following facts demonstrate she did not exercise reasonable diligence: she did not retain an attorney until June 16, 2023; plaintiff never reached out to defendants about the incident, did not return the superintendent's phone call, and never requested videos or school incident reports from defendants; never requested police or incident reports from the City of Paterson; and she never reached out to any eyewitnesses. Additionally, defendants maintain the information plaintiff gathered from watching the video was available from other sources, including witnesses and newspaper articles.

19

Plaintiff, on the other hand, contends the court properly concluded her notice of claim was timely filed by applying the discovery rule and finding her claim accrued on May 23, 2023. Application of the discovery rule to toll the accrual date of her claims was warranted because "while it was clear that one third party was responsible for [Shaquan's] stabbing and death, the [fifteen]-year-old perpetrator, it was not clear that any additional party was responsible, i.e. the [d]efendant public entities."

Relying on Mendez v. South Jersey Transportation Authority, 416 N.J. Super. 525 (App. Div. 2010), plaintiff argues "the mere fact that [Shaquan] was killed in the vicinity of the school did not reasonably alert [plaintiff] to the liability of the [d]efendant public entities." With respect to defendants' argument that plaintiff should have been aware of its potential liability due to the duty schools owe to students during dismissal, plaintiff responds that "[t]he mere legal possibility of a public entity's liability, by any stretch of the imagination, is not the applicable standard." Quoting Mendez, plaintiff maintains such a standard "'would encourage whimsical filings of [] notices to beat the ninety-day deadline.'" 416 N.J. Super. at 534. Rather, plaintiff argues the correct analysis focuses on "the information and facts available, and more importantly unavailable to the claimant despite reasonable and diligent inquiry."

On this point, plaintiff notes there is no evidence in the record demonstrating she was aware of defendants' potential liability until she viewed the video.

Next, plaintiff argues she "exercised extraordinary diligence in pursuing her claim." In support, plaintiff explains she sought information pertaining to her son's death through proper channels; namely, by submitting an OPRA request and following up on that request once a week for approximately three months. Plaintiff further notes the city of Paterson "failed to ever produce the video in response, request an extension, deny the request, or otherwise formally respond."

Having reviewed the record in the context of these well-established legal principles, we are convinced the court properly found plaintiff timely filed her notice of claim on July 25, 2023, by applying the discovery rule and determining her claims accrued on May 23, 2023. In reaching this conclusion, we are satisfied all the court's factual findings on the accrual issue, including its credibility-based findings, are amply supported by the record at the Lopez hearing and accordingly warrant our deference. Nicholas, 213 N.J. at 47. We specifically concur with the court's findings, which are entirely consistent with plaintiff's testimony, that the video does not appear to show that anyone from the police department or school immediately rendered aid to Shaquan before an

21

ambulance arrived.

We also are convinced on our de novo review that the court properly applied those supported factual findings to the applicable law and determined despite exercising ordinary diligence a reasonable person would not have been aware of facts supporting defendants' potential liability until they viewed the video. See Manalapan Realty, 140 N.J. at 378. Specifically, a reasonable person exercising ordinary diligence would not have been aware that after he was stabbed, Shaquan remained untreated and unattended for several minutes before an ambulance arrived.

We disagree with defendants that plaintiff was aware of sufficient facts to place her on notice of its potential liability due to the duty of care schools owe to students. First, the facts to which defendants contend plaintiff was aware, simply relate to Shaquan's presence at school and that he was fatally stabbed by a third party. None of those facts, however, implicate defendants' failure to provide aid or otherwise assist Shaquan until paramedics arrived. Indeed, in our view, defendants fail to identify sufficient evidence in the record to support their contention that a reasonable person should have been aware of these facts before viewing the video on May 23, 2023. They called no witnesses and introduced no evidence to support this argument. Instead, defendants ask us to draw

22

unsupported inferences from the record by effectively ignoring the court's supported factual findings in order to conclude plaintiff's investigation was insufficient and her diligence as evidenced by her OPRA requests and weekly inquiries to municipal officials unreasonable. We decline to do so. To receive the benefit of the discovery rule, plaintiffs are only required to exercise reasonable diligence which the court correctly determined she did.

With respect to defendants' argument plaintiff could have gathered this information from newspaper articles or other sources, there is only a single article in the record that arguably could have alerted plaintiff to defendants' inaction and potential liability. As noted, NJ.com published an article on February 28, 2023, in which one of Shaquan's classmates stated the following: "Why is it that it was just three kids that were trying to help [Shaquan]? . . . We needed the adults. The adults should have been the ones applying pressure to the wound, helping this boy."

We are unconvinced this sole statement—which defendants did not establish plaintiff ever read—was sufficient to put plaintiff on notice of any defendants' potential liability. But even if we were to impart the information in the article to her, a reasonable person could easily have interpreted these statements as referring to other adults unrelated to defendants. Further, we note

23

the article even states "the violence occurred after school when most teachers and other school staff usually go home." As such, a reasonable person reading this article likely would not have ascertained defendants' potential liability from that statement alone.

As to defendants' contention plaintiff should have been aware it may have contributed to Shaquan's injury due to the duty of care schools owe to students, we are similarly unpersuaded. Although schools do owe a duty of care to students during dismissal time, the existence of that duty does not mean plaintiff should have been immediately aware of defendants' potential liability. See, e.g., Jerkins ex rel. Jerkins v. Anderson, 191 N.J. 285, 300 (2007) (holding schools must "exercise reasonable care in supervising children during dismissal"). Indeed, the existence of a duty means nothing if a plaintiff is unaware of any facts indicating a breach. Again, a reasonable person would not have been aware of any facts indicating defendants may have breached any duty until they viewed the video on May 23, 2023.

We also reject defendants' contention that the video did not reveal any new information to plaintiff. As noted, prior to viewing the video plaintiff stated—again credibly—that she was only aware of the fact that her son was fatally stabbed by a third-party during dismissal time. According to her

24

testimony, upon watching the video, she did not see the police or any school employee rendering aid to him at any time. Nothing in the record, aside from the vague quote from an online article, could have reasonably alerted plaintiff to this fact.

We disagree with defendants' argument that the video only revealed new information as to defendants' potential liability and the court should have determined the accrual date of plaintiff's claims against the school and police department individually. As noted, prior to viewing the video plaintiff had no information regarding the assistance Shaquan did or did not receive from defendants. After watching the video, however, plaintiff became aware of the fact that neither defendants' employees nor law enforcement officers specifically, who were on the scene, rendered any aid. We agree with the court upon review of the video, and not before, plaintiff obtained the necessary information that defendants may have contributed to her son's injury.[5]

We also reject defendants' arguments that the court committed error in accepting plaintiff's claim because even if timely filed based on its accrual

---

[5] As noted, none of the remaining parties filed a notice of appeal or provided a brief addressing this issue, or any other. See supra. n.1. Rather, they expressly relied only on defendants' submission. They also provided no evidence at the Lopez hearing to support an accrual date other than that proffered by plaintiff or defendants.

analysis, plaintiff waited too long to seek permission to file a late notice of claim. On this point defendants state plaintiff waited ninety-eight days to file its notice of claim as she was notified by their insurance company on October 17, 2023, and did not file her motion until January 31, 2024. Again, we disagree.

First, none of the cases cited by defendants; namely <u>Wood v. County of Burlington</u>, 302 N.J. Super. 371 (App. Div. 1997), and <u>Epstein v. State</u>, 311 N.J. Super. 350, 360 (1998), support its position as they are both factually distinguishable and legally inapposite. Here, plaintiff's claim was timely filed according to the court and its application within the one-year period prescribed by N.J.S.A. 59:8-9. Simply put, plaintiff's claim was not late. We are aware of no authority that would nevertheless bar a plaintiff from prosecuting her cause of action despite a timely notice because the application to file a late notice was not filed within a reasonable time. In any event, we are satisfied plaintiff sought leave within a reasonable period.

Finally, we are unpersuaded by defendants' argument plaintiff did not act with ordinary diligence in investigating any potential claims. On this point, the facts warrant repeating. On March 1, 2023, approximately two weeks after her son's death, plaintiff submitted a focused OPRA request. Not only did plaintiff personally seek updates on her request every week for approximately two

A-0012-24

months—while grieving her son's death—but she was also informed at one point by an individual at city hall that "there was nothing to give, that none of the cameras were up and just to come back and follow up." These actions certainly demonstrate "'ordinary diligence.'" J.P. v. Smith, 444 N.J. Super. 507, 526 (App. Div. 2016) (quoting Martinez v. Cooper Hosp.-Univ. Med. Ctr., 163 N.J. 45, 52 (2000)). Further, plaintiff testified—again credibly according to the court—that Shaquan's cousin was not permitted to speak with her. Under these circumstances, plaintiff cannot be faulted under an ordinary diligence standard for failing to pursue every possible avenue to obtain more information.

In light of our conclusion the court properly determined plaintiff's notice of claim was timely filed by applying the discovery rule, we discern no error in the court's failure to address the extraordinary circumstances prong of the Beauchamp v. Amedio analysis because it is only if the court determines that a notice of claim was not filed within ninety days of the accrual date does the court proceed to "the third task . . . to decide whether extraordinary circumstances exist justifying a late notice." 164 N.J. 111, 118-19 (2000).

We conclude, however, that the court's prejudice finding was unnecessary considering its accrual decision. Indeed, a prejudice finding is only required in the context of the extraordinary circumstance analysis, which the court correctly

A-0012-24

concluded that it need not address in light of its accrual finding.  We view the court's finding on the issue of prejudice as harmless, however, as it is unrelated to is accrual decision and thus clearly dicta.

To the extent we have not addressed any remaining arguments, it is because we have determined they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division