**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0979-24

RACHEL KASUCH,

       Plaintiff-Appellant/
       Cross-Respondent,

v.

COUNTY OF MIDDLESEX,

       Defendant-Respondent/
       Cross-Appellant.

_____

       Submitted January 13, 2026 – Decided April 20, 2026

       Before Judges DeAlmeida and Torregrossa-O'Connor.

       On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6363-21.

       Curcio Law LLC, attorneys for appellant/cross-respondent (Benjamin C. Curcio and Thomas J. Palma, of counsel and on the briefs).

       Kelso & Burgess, attorneys for respondent/cross-appellant (Kurt J. Trinter, on the briefs).

PER CURIAM

Plaintiff Rachel Kasuch appeals from the October 25, 2024 Law Division order granting summary judgment to defendant County of Middlesex after finding it immune from liability under the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :12-3, for the injuries she incurred in a bicycling accident on County-owned property. Defendant cross-appeals from the: (1) November 4, 2022 order denying without prejudice its motion to dismiss the complaint for plaintiff's failure to file a notice of claim (NOC) pursuant to the TCA; (2) May 24, 2024 order denying with prejudice its motion to dismiss the complaint based on the court's finding plaintiff substantially complied with the notice provisions of the TCA; and (3) June 20, 2024 order denying its motion for reconsideration of the May 24, 2024 order.

We reverse the May 24, 2024 order because the record does not support the motion court's conclusion plaintiff substantially complied with the notice provisions of the TCA, and remand for entry of an order dismissing the complaint. In light of our decision, we need not address the remaining two orders on the cross-appeal. Finally, we dismiss the appeal because plaintiff's substantive claims are barred by her failure to comply with the notice provisions of the TCA.

A-0979-24

I.

On August 26, 2020, plaintiff was riding a bicycle on the Middlesex County Greenway, a paved walking and biking path owned and operated by defendant. In the area of the accident, the paved path was approximately twelve- to sixteen-feet wide with approximately two feet of stone on each side.

At the time plaintiff was cycling, a County employee was assigned to clear brush from a creek alongside the trail. The employee parked a yellow loader with a backhoe and front bucket parallel to the creek. One tire of the loader was on the stone and the other tire was on the paved path. The employee could not park the loader closer to the creek because the dirt between the stone edge of the path and the creek was too unstable to support the equipment. The parked loader partially obstructed the paved path. However, the employee estimated approximately two feet of straight and level paved path and two feet of stone were unobstructed where the loader was parked.

The employee extended the loader's two stabilizer legs, which were low to the ground. The parties dispute the color of the legs. Defendant alleged the legs were yellow with a small chrome portion that did not extend beyond the yellow portion of the legs. Plaintiff alleged the legs were yellow but a portion of the legs were bare chrome and extended beyond the yellow portion. One

3                                                                          A-0979-24

extended leg rested on the dirt between the paved path and the creek, and the other rested on the paved path. According to the employee, he placed cones on the path and activated the loader's four white lights, four hazard lights, and rooftop beacon light. The headlights and taillights of the loader were also illuminated.

According to plaintiff, as she approached on her bicycle, she saw the stationary yellow loader, but did not see the chrome portion of the stabilizer leg extending onto the paved path. Plaintiff could not estimate her distance from the loader when she first saw it, or how much time passed from her first noticing the loader to the accident. However, she acknowledged she saw the equipment in enough time to think about whether she should stop or attempt to maneuver around the equipment. Seeing people on the opposite side of the loader, plaintiff assumed she could ride past it on her bicycle. She denied any cones or other warning devices were present near the loader or its extended leg, and alleges the loader's lights were not illuminated.

According to plaintiff, as she passed the loader while riding on the paved path, a pedal of her bicycle caught on the extended stabilizer leg. The contact caused plaintiff to fall over the handlebars of her bicycle to the ground. She alleged she sustained significant physical injuries from the fall. A Metuchen

A-0979-24

police officer responded to the scene, and emergency medical technicians transported plaintiff to a hospital for treatment.

According to the employee, he saw plaintiff approach the loader on her bicycle. He claims he made eye contact with plaintiff, stood up and out of the cab of the loader, pointed to the stabilizer leg, and warned her to go around the leg. The employee stated plaintiff nodded as if she understood his warning. He saw plaintiff's operation of the bicycle become shaky as they communicated, as if she was losing control of the bicycle. The employee witnessed the accident and assisted plaintiff after her fall.

Richard Crooks was a Claims Technical Specialist with Inservco Insurance Services, Inc. (Inservco), defendant's third-party insurance administrator at the time of the accident. On September 3, 2020, Crooks learned of the accident when he received from a County employee a copy of: (1) an August 26, 2020 operations report prepared by a County employee, which stated that "[a] female bike rider (name unknown)" struck a County-owned loader while riding a bicycle on the Greenway in Metuchen and suffered a cut chin and dizziness, and the operator of the loader stated all of its safety lights were on at the time of the accident; and (2) an August 28, 2020 operations report prepared

5

A-0979-24

by a County employee that referenced the accident and identified plaintiff by name, address, and driver's license number.

Crooks subsequently received a copy of a Metuchen police report that included plaintiff's name, address, birthday, and home telephone number. In the report, the officer wrote, in relevant part:

> Kasuch stated she was riding her bike going [northbound] when she lost her footing on the peddle [(sic)] and clipped the back of the construction equipment. Kasuch stated she flipped off the bike and landed on her head/face. I was able to notice the gash on her chin due to the fall.

On September 10, 2020, Crooks sent two letters to plaintiff. The first, entitled "receipt of claim acknowledgment," included a claim number and stated, "Type of Claim: General Liability." The letter provided: "We acknowledge receipt of the above captioned claim which is being handled by the undersigned. Please refer to the above claim number for all future correspondence. Thank you." The second letter requested plaintiff provide her social security number, gender, and date of birth for defendant to keep on file to comply with a federal statute concerning Medicare. Crooks included a form for reporting the requested information with the second letter.

A-0979-24

On September 23, 2020, plaintiff left a voice message on Crooks's telephone acknowledging receipt of the letters but denying knowledge of why she received them.

On September 24, 2020, plaintiff and Crooks spoke on the telephone. After the conversation, Crooks believed plaintiff was angry he requested her personal information. Plaintiff told Crooks she was considering hiring an attorney and denied she told the police officer the accident was caused when she lost her footing on the pedal of her bicycle. Plaintiff informed Crooks she would not complete the form, which she later returned blank.

On October 12, 2020, Crooks received a letter from an attorney stating she represented plaintiff. The letter, which included the claim number generated by Crooks, provided, in relevant part:

> Please be advised, this office has been retained to represent [plaintiff] with regard to injuries she sustained as a result of a bicycle accident which occurred on the above date. For your convenience a copy of the police report is enclosed hereto (sic). In that regard, kindly forward all future correspondence to our office.
>
> Please do not hesitate to contact my office, should you have any questions or concerns.

The letter identified the "[d]ate of [l]oss" as August 27, 2020, the day after the accident. The enclosed report was the police report already in Crooks's

A-0979-24

possession. The letter did not describe plaintiff's injuries, demand a specified amount of damages, or set forth a theory of defendant's liability for plaintiff's injuries.

On December 9, 2020, Crooks, having not received an NOC from plaintiff, closed his file.

On February 17, 2021, Crooks received a call from the attorney who wrote the October 12, 2020 letter. She asked if he received plaintiff's NOC. Crooks responded he had not received an NOC from plaintiff. The attorney replied she "would look into it" but never again contacted Crooks.

In response to that conversation, Crooks sent the attorney a letter dated February 17, 2021, which referred to plaintiff by name, included the claim number he previously assigned to the matter, identified the date of loss as August 27, 2020, and stated, in relevant part:

> Please be advised that INSERVCO is the Third Party Administrator for the County . . . and handles all claims asserted against this public entity, and its member entities, under the [TCA].
>
> The investigation into the above listed matter is now concluded. The investigation indicates that there is no legal liability on the part of the County or any of its . . . employees. Specifically, the investigating police officer's report quotes your client as saying that she collided with the piece of equipment because her foot slipped off her bicycle pedal.

Accordingly, your client's claim is denied and no voluntary payments will be made.

Please do not hesitate to contact the undersigned regarding same should you have any questions. Should litigation be filed in this matter naming [the] County . . . or employees as defendants the funds of the public will be utilized in defense of same and recovery of all costs and fees will be sought via Court Order.

On November 2, 2021, plaintiff filed a complaint in the Law Division against defendant seeking damages for the injuries she allegedly suffered in the bicycle accident. Plaintiff alleged defendant was negligent in its maintenance and operation of its property, which she described as "a municipal park." Plaintiff alleged, among other things, defendant permitted a dangerous condition to exist on its property, which caused the accident and her injuries, and failed to warn the public of the dangerous condition. The complaint also alleged plaintiff filed an NOC on or about November 13, 2020, but did not identify the entity with which the NOC was filed.

On May 23, 2022, in response to defendant's discovery demand, plaintiff produced an NOC dated November 13, 2020, which her counsel alleged was filed with the New Jersey Department of Treasury. The NOC, a preprinted State form with the address of a State office, described the location of the bicycle accident as "Middlesex County Greenway" and "Middlesex Greenway

9

Parkway." In addition, the NOC stated a copy of the police officer's report concerning plaintiff's accident was attached. In the NOC, in response to the direction, "STATE THE NAMES AND ADDRESSES OF EACH STATE AGENCY OR AGENCIES AND EACH STATE EMPLOYEE WHOM YOU CLAIM CAUSED YOUR DAMAGES OR INJURIES," plaintiff's counsel entered: "MIDDLESEX COUNTY, MIDDLESEX COUNTY GREENWAY, NAME OF THE CONSTRUCTION COMPANY (NAME UNKNOWN AT THIS TIME)." Plaintiff did not produce evidence establishing she filed the NOC with the State or defendant.

On October 7, 2022, defendant moved for summary judgment seeking dismissal of the complaint for plaintiff's failure to file an NOC with the County. Plaintiff opposed the motion, arguing she substantially complied with the notice provisions of the TCA by filing an NOC with the State and sending the October 12, 2020 letter to Crooks.

On November 4, 2022, the court issued an oral decision denying the motion without prejudice. The court concluded the record was unclear whether Crooks received the November 13, 2020 NOC plaintiff alleged to have filed with the State, and, if so, when. The court granted the parties leave to conduct discovery, including depositions, addressing whether Crooks or defendant came

10

into possession of the November 13, 2020 NOC. A November 4, 2022 order memorialized the court's decision.[1]

On March 28, 2024, defendant again moved for summary judgment seeking dismissal of the complaint for plaintiff's failure to file an NOC with the County. In support of its argument, defendant submitted Crooks's affidavit stating he never received the November 13, 2020 NOC from plaintiff or her attorney. Plaintiff opposed the motion, arguing the State must have forwarded the NOC to Crooks because his February 17, 2021 letter, which cites the TCA, indicates an investigation of the accident was conducted and plaintiff's claim was rejected. Alternatively, plaintiff argued she substantially complied with the notice provisions of the TCA when she sent Crooks the October 12, 2020 letter.

On May 24, 2024, the court issued an oral decision denying defendant's motion. The court found:

> [H]ere, there appears to be substantial compliance in that the County had notice, the county had notice of an injury, the County had notice of a location, the county had notice that an instrumentality, it was something owned by the County, may have been involved in the accident.
>
> The . . . February 17[,] 2021 letter appears to confirm that an investigation was done, which is [the] primary purpose of the notice of tort claim [to] put a

---

[1] Although the court permitted plaintiff to depose Crooks, she did not do so.

government entity on notice, so they can review the claim and make a decision, which way they're going to respond to the claim.

A May 24, 2024 order memorialized the court's decision.

On June 3, 2024, defendant moved for reconsideration of the May 24, 2024 order. Defendant argued plaintiff did not substantially comply with the TCA notice provisions because she did not notify defendant of the extent of her injuries and claimed damages, or a theory of defendant's liability within ninety days of the accrual of her claim. Plaintiff opposed the motion.

On June 20, 2024, the court issued an oral decision denying the motion. The court found defendant made no convincing argument it erred when it found plaintiff substantially complied with the TCA notice requirements. A June 20, 2024 order memorialized the court's decision.

On August 30, 2024, defendant moved for summary judgment, arguing it was immune from liability under the TCA. Defendant argued plaintiff did not establish her injuries were caused by a dangerous condition of public property or that defendant acted in a palpably unreasonable manner in not protecting against the condition pursuant to N.J.S.A. 59:4-2, or failed to warn of a dangerous condition of public property endangering the safe movement of traffic, N.J.S.A. 59:4-4. Plaintiff opposed the motion.

12

On October 25, 2024, the court issued an oral decision granting defendant's motion. The court found the temporary parking of a loader along the paved path to remove debris from the creek was not a dangerous condition and the County did not act in a palpably unreasonable manner in failing to protect against a dangerous condition. The court also found plaintiff did not act with due care when she encountered the loader, which she admitted was stationary when she attempted to pass. The court found a reasonably prudent person operating a bicycle could have avoided collision with the loader. An October 25, 2024 order memorialized the court's decision. Plaintiff's appeal from the October 25, 2024 order followed.

Plaintiff argues the motion court erred when it: (1) resolved disputed issues of material fact; (2) did not consider the undisputed facts in a light most favorable to her; (3) found defendant's placement of the loader did not constitute a dangerous condition; and (4) concluded defendant did not act in a palpably unreasonable manner.

Defendant subsequently cross-appealed from the November 4, 2022, May 5, 2024, and June 20, 2024 orders. Defendant argues the motion court erred because "the minimal information" in the October 12, 2020 letter was

13

insufficient to constitute substantial compliance with the notice provisions of the TCA.

II.

We begin with defendant's cross-appeal of the May 24, 2024 order because plaintiff's compliance with the notice provisions of the TCA is a statutory predicate to consideration of her substantive claims. We review a grant of summary judgment de novo, applying the same standard as the motion court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the motion court's legal analysis or statutory interpretation.

14

RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Self-serving assertions that are unsupported by evidence are insufficient to create a genuine issue of material fact. Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 551 (App. Div. 2015). "Competent opposition requires 'competent evidential material' beyond mere 'speculation' and 'fanciful arguments.'" Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 426 (App. Div. 2009) (quoting Merchs. Express Money Order Co. v. Sun Nat'l Bank, 374 N.J. Super. 556, 563 (App. Div. 2005), app. dism., 217 N.J. 591 (2006)). We review the record "based on our consideration of the evidence in the light most favorable to the parties opposing summary judgment." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523-24 (1995).

The TCA modifies the doctrine of sovereign immunity and establishes the parameters within which an injured party may recover for the tortious acts of public entities and employees. Feinberg v. Dep't of Envt'l Prot., 137 N.J. 126, 133 (1994). The statute's "guiding principle" is "that immunity from tort liability is the general rule and liability is the exception." D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005)). The Act, therefore, "imposes strict

requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468 (2011).

"Among the most important limitations that the [TCA] imposes on would-be claimants are . . . the statutory provisions that govern a claimant's obligation to file [an NOC] as a prerequisite to initiating litigation." D.D., 213 N.J. at 134. Subject to exceptions not applicable here, "[n]o action shall be brought against a public entity . . . under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in" the TCA. N.J.S.A. 59:8-3. Prior to initiating suit, a claimant must file with the public entity an NOC that "shall include":

> a.    The name and post office address of the claimant;
>
> b.    The post-office address to which the person presenting the claim desires notices to be sent;
>
> c.    The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
>
> d.    A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
>
> e.    The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and

16

f.    The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

[N.J.S.A. 59:8-4.]

The NOC must be signed by the claimant or a person acting on the claimant's behalf.  N.J.S.A. 59:8-5.  Given the statutory signature requirement, the NOC must be in writing.  D.D., 213 N.J. at 159-60.

In addition, the NOC must be filed with the entity the claimant alleges is responsible for the claim.

A claim for damage or injury arising under this act against the State shall be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission.  A claim for injury or damages arising under this act against a local public entity shall be filed with that entity.

[N.J.S.A. 59:8-7.]

"A claim may be presented to a local public entity by delivering it or mailing it certified mail to the entity."  N.J.S.A. 59:8-10(a).

Finally,

[a] claim relating to a cause of action . . . for injury or damage to person or to property shall be presented . . . not later than the 90th day after accrual of the cause of

17                                      A-0979-24

action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law. The claimant shall be forever barred from recovering against a public entity or public employee if:

a. The claimant failed to file the claim with the public entity within 90 days of accrual of the claim except as otherwise provided in [N.J.S.A.] 59:8-9 . . . .

[N.J.S.A. 59:8-8(a).]

The TCA's notice provisions are not "a trap for the unwary." Lowe v. Zarghami, 158 N.J. 606, 629 (1999) (quoting Murray v. Brown, 259 N.J. Super. 360, 365 (Law. Div. 1991)). The timely filing of an NOC with the correct entity is intended to advance several purposes:

(1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit;

(2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense;

(3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and

(4) to inform the [entity] in advance as to the indebtedness or liability that it may be expected to meet.

[McDade, 208 N.J. at 475-76 (internal quotations omitted) (quoting Beauchamp v. Amedio, 164 N.J. 111, 121-22 (2000)).]

As the Supreme Court explained,

> [W]hen it enacted the [TCA's NOC] provisions, "the Legislature sought to afford to public entities an 'opportunity to plan for potential liability and correct the underlying condition.'" O'Donnell v. N.J. [Tpk.] Auth., 236 N.J. 335, 345 (2019) (quoting Jones v. Morey's Pier, Inc., 230 N.J. 142, 155 (2017)). Those provisions "compel a claimant to expose his intention and information early in the process in order to permit the public entity to undertake an investigation while witnesses are available and the facts are fresh." Gomes v. [Cnty.] of Monmouth, 444 N.J. Super. 479, 488 (App. Div. 2016) (quoting O'Neill v. City of Newark, 304 N.J. Super. 543, 549 (App. Div. 1997)).
>
> [H.C. Equities, LP v. Cnty. of Union, 247 N.J. 366, 384 (2021).]

"Ascertaining the timeliness of a [TCA] notice requires a simple, three-step sequential analysis that never changes." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 416 (App. Div. 2020) (citing Beauchamp, 164 N.J. at 118). "The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1." Ibid. (citing Beauchamp, 164 N.J. at 118). "The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual." Ibid. (quoting Beauchamp, 164 N.J. at 118). "Once the date of accrual is ascertained, one can proceed to the second step, which 'is to determine whether a notice of claim was filed within ninety days' as required by N.J.S.A. 59:8-8." Ibid. (quoting Beauchamp, 164 N.J. at 118). "'If not, the third task is

19

to decide whether extraordinary circumstances exist justifying a late notice' under N.J.S.A. 59:8-9." Ibid. (quoting Beauchamp, 164 N.J. at 118-19).[2]

We begin with a determination of the date on which plaintiff's claims accrued. "Accrual shall mean the date on which the claim accrued . . . ." N.J.S.A. 59:8-1. A claim accrues under the TCA "on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen." Beauchamp, 164 N.J. at 123. There is no dispute plaintiff's claims accrued on August 26, 2020.

Ninety days from August 26, 2020, was November 24, 2020. Plaintiff produced no evidence she filed an NOC with defendant on or before November 24, 2020, or at any other time. The November 13, 2020 NOC in the record was addressed to the State Department of Treasury. Assuming plaintiff's counsel filed the NOC with the State, which defendant disputes, such filing would not constitute filing the NOC with defendant. The NOC "must 'be filed directly with the specific local entity at issue.'" O'Donnell, 236 N.J. at 345 (quoting McDade, 208 N.J. at 476). The November 13, 2020 NOC did not satisfy plaintiff's notice obligations under the TCA.

---

[2] Plaintiff did not move for leave to file a late NOC under N.J.S.A. 59:8-9. We do not, therefore, consider the third step of the McNellis-Wallace analytic framework.

A-0979-24

The only written communication in the record from plaintiff or her counsel to defendant between August 26, 2020, and November 24, 2020, was the October 12, 2020 letter of plaintiff's counsel to Crooks, who acted as defendant's agent. Enclosed with the letter was a copy of the police officer's report already in Crooks's possession. The motion court found plaintiff substantially complied with the notice provisions of the TCA when her counsel sent the October 12, 2020 letter. We disagree.

To prevent technical defects from barring legitimate claims, courts have applied the equitable doctrine of "substantial compliance" to determine if a purported NOC satisfied the notice requirements of the TCA. See D.D., 213 N.J. at 159-60; Lebron v. Sanchez, 407 N.J. Super. 204, 215 (App. Div. 2009). "[S]ubstantial compliance means that the notice has been given in a way, which though technically defective, substantially satisfies the purposes for which notices of claims are required." Lebron, 407 N.J. Super. at 216 (quoting Lameiro v. W. N.Y. Bd. of Educ., 136 N.J. Super. 585, 588 (Law. Div. 1975)). Substantial compliance is an equitable doctrine used "to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 352 (2001). Parties seeking to apply the substantial-compliance doctrine

21

must demonstrate they took "a series of steps . . . to comply with the statute involved," id. at 353 (quoting Bernstein v. Bd. of Trs. of Tchr's Pension & Annuity Fund, 151 N.J. Super. 71, 76-77 (App. Div. 1977)), and "those steps achieved the statute's purpose, as for example, providing notice," Cnty. of Hudson v. State, Dep't of Corr., 208 N.J. 1, 22 (2011).  Substantial compliance applies only if the other party is not prejudiced and there is "a reasonable explanation why there was not a strict compliance with the statute."  Galik, 167 N.J. at 353 (quoting Bernstein, 151 N.J. Super. at 76-77).

Application of the substantial-compliance doctrine in the tort-claim context "has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." D.D., 213 N.J. at 159.  "[W]e review de novo . . . whether the doctrine of substantial compliance applies to preserve" a claim.  H.C. Equities, 247 N.J. at 381.

A comparison of the information in the October 12, 2020 letter to the information required in N.J.S.A. 59:8-4 guides our analysis.  Subsection (a) of the statute requires the NOC include "[t]he name and post office address of the claimant."  N.J.S.A. 59:8-4(a).  The October 12, 2020 letter states plaintiff's

name, but not her post office address. However, the police report enclosed with the letter included plaintiff's address. See Able v. City of Atl. City, 228 N.J. Super. 360, 365-67 (App. Div. 1988) (holding an NOC stating the wrong date of an accident substantially complied with the statutory notice provisions because hospital records attached to the NOC clearly and accurately set forth the correct date). The letter substantially complied with subsection (a).

The October 12, 2020 letter also substantially complied with subsections (b), (c), and (e) of the statute. The letter identified the attorney's address, to which she asked all future correspondence be sent. In addition, the date, place, and other circumstances of the accident were detailed in the police report attached to the letter. The letter also identified the claim number assigned by Crooks to the accident after he received two County-employee operations reports and the police report describing the accident in detail. Those documents also identified the employee who parked the loader on the paved path, and witnessed the accident.[3]

---

[3] We note the October 12, 2020 letter identified the date of loss as August 27, 2020, the day after the accident. Crooks's September 10, 2020 receipt of claim acknowledgement also identified August 27, 2020, as the date of loss. The operations reports and police report identified the date of the accident as August 26, 2020. There is no dispute the accident occurred on August 26, 2020.

The October 12, 2020 letter and the enclosed report, however, fell short of substantially complying with subsections (d) and (f) of the statute. The letter and report did not provide "[a] general description of the injury, damage or loss incurred so far as it may [have been] known at the time of presentation of the claim . . . ." N.J.S.A. 59:8-4(d). Nor did the documents indicate "[t]he amount claimed . . . , including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known" or "the basis of computation of the amount claimed." N.J.S.A. 59:8-4(f).

The October 12, 2020 letter merely stated plaintiff sustained "injuries" in the accident. The enclosed police report stated plaintiff reported "she flipped off the bike and landed on her head/face[,]" had a "gash on her chin[,]" and was transported by ambulance to a hospital. One of the employee operations report associated with the claim number on the October 12, 2020 letter stated plaintiff had a "cut chin" and complained of dizziness after the accident.

Plaintiff alleged, however, she sustained significant physical injuries beyond her lacerated chin, required surgery, and was suffering from continuing pain and limitations because of the accident. A purported NOC that is "[d]evoid of any reference to the scope of [a plaintiff's] damages claim arising from the alleged torts . . . fail[s] to serve the final objective of the [TCA], to inform the

public entit[y] in advance 'as to the indebtedness or liability that [it] may be expected to meet.'" H.C. Equities, 247 N.J. at 389 (quoting Beauchamp, 164 N.J. at 122). Plaintiff did not notify defendant of the extent of her injuries or claimed damages. Defendant was, therefore, unable to assess its indebtedness and potential liability to plaintiff prior to the filing of her complaint.

In addition, neither the October 12, 2020 letter, the enclosed police report, nor the operations reports associated with the claim number on the letter, identify plaintiff's theory of defendant's liability for her claimed damages. None of those documents referred to a dangerous condition or failure to warn bicyclists of the dangerous condition. To the contrary, the police report stated plaintiff told the officer the accident happened when she lost her footing on the pedal of her bicycle. While plaintiff later claimed not to have made that admission to the officer, as of its receipt of the October 12, 2020 letter, defendant was not on notice of plaintiff's claims the parked loader was a dangerous condition, no cones or other warning measures were in place near the loader, and the equipment's safety lights were not activated, contrary to a statement in the employee operations report. As of October 12, 2020, the County's investigation was predicated on plaintiff's purported admission the

25

accident was caused by her operation of the bicycle and not any condition on County property.

Finally, we note an absence in the record of any explanation for plaintiff's failure to file an NOC with defendant. The record does not explain plaintiff's counsel's completion of a State NOC form, or explain why she filed that form with the State, assuming such a filing was made, and not with defendant as required by the TCA. Filing the incorrect form with the incorrect entity does not constitute a series of steps taken to comply with the notice provisions of the TCA. Nor did plaintiff offer a reasonable explanation for failing to identify in the October 12, 2020 letter her theory of defendant's liability for her injuries. Separate from counsel's purported filing of a TCA with the State, she sent a letter to defendant but did not describe plaintiff's alleged injuries, quantify her claim for damages, or set forth a theory of defendant's liability for those damages. Defendant was prejudiced by plaintiff's failure to file an NOC because it was deprived of the opportunity to investigate and attempt to remediate a purported dangerous condition and assess and attempt to settle plaintiff's damages claim prior to the filing of her complaint.

We therefore conclude the motion court's finding that plaintiff substantially complied with the notice provisions of the TCA is not supported

26

by the record. The May 24, 2024 order is reversed and the matter is remanded for entry of an order dismissing the complaint for plaintiff's failure to comply with the notice provisions of the TCA.

Because we reverse the May 24, 2024 order, we need not decide defendant's appeal of the November 4, 2022 order denying its motion to dismiss the complaint without prejudice or the June 20, 2024 order denying its motion for reconsideration of the May 24, 2024 order. Reversing either or both of those orders would provide no further benefit to defendant. In addition, because our reversal of the May 24, 2024 order precludes plaintiff's substantive claims, we dismiss plaintiff's appeal of the October 25, 2024 order.

The appeal is dismissed. On the cross-appeal, the May 24, 2024 order is reversed and the matter is remanded for entry of an order dismissing the complaint. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Hanley

Clerk of the Appellate Division

27

A-0979-24